## CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF SOUTH CAROLINA.

---

Justices of the Supreme Court during the Period comprised in this Volume.*

Hon. HENRY McIVER, Chief Justice.
Hon. SAMUEL McGOWAN, Associate Justice.
Hon. YOUNG J. POPE,           "           "

---

### STATE *EX REL.* COLUMBIA CLUB v. McMASTER.

1. Liquor Licenses—Social Clubs.—The statutes of this State regulating taverns at which the sale of liquor without license is forbidden,

---

* The vacancy caused by the death of Chief Justice Simpson was filled by the election of Hon. Henry McIver, then senior Associate Justice, on December 1, 1891, who thereupon qualified as Chief Justice and resigned the office of Associate Justice. On December 3, 1891, Hon. Young J. Pope, then Attorney General, was elected Associate Justice to fill this vacancy, who at once qualified and on the next day took his seat on the bench, making a full court. The first twelve cases reported in this volume, down to the case of Railroad Company *v.* Leech, inclusive, were heard and decided by Justices McIver and McGowan only. The case of Williams *v.* Benet, and all subsequent cases, were heard and decided by the full bench as now constituted, except where otherwise stated.—Reporter.

were not intended to include social clubs, but only the ordinary drinking saloons which sell liquor for a profit as a means of livelihood.

2. MUNICIPAL POWER—LICENSES.—Municipalities have only such power as is given to them by the legislature, and their right to require licenses for business or other purposes must be derived from statute.

3. LIQUOR LICENSES—SOCIAL CLUBS.—A chartered club of limited membership, *bona fide* organized for social purposes and with no intent of evading the law, purchased liquor with its funds, and distributed the same from day to day among such of its members as wished it at such price as was considered sufficient to reimburse the club for its outlay in the purchase of these liquors. None but members could call for or pay for liquor or drinks, and the receipts fell short of full repayment for the liquor purchased. *Held*, that this was distribution among the members of the club and not a sale of liquor within the meaning of the statutes of this State forbidding such sale without license. A city council, therefore, under the authority to grant liquor licenses, could not require a license fee from such club and charge a fee therefor.

Before HUDSON, J., Richland, April, 1891.

This was a proceeding by prohibition. The Circuit Judge rendered the following judgment:

The plaintiff is a duly incorporated social club, which out of its common fund purchased liquors in the name of the club, and kept the same for the benefit of all its members. These liquors were kept, with other supplies of the club, in the butler's pantry or in the appropriate place therefor. There was in the club room no liquor or wine room, to which the members had the right to resort and drink free of charge, but any member of the club; in the club house, could give an order to a servant or attendant in the club, or to the steward, written or verbally, at his option, and the liquor so ordered was served to him. He then, at the time it was served, paid for it to the steward, or signed a memorandum check which was written out, and he paid for it afterwards as charged against his account which was furnished to him at the end of the month. No one but a member could pay for such liquor as ordered. A member could bring a non-resident friend. Except in this way, no one but a member could be admitted. This disposition of liquor was not for the purpose of making a profit out of a member, nor for the purpose of evading the law. The club had no license to sell liquors.

In South Carolina there is a simple law in regard to licenses
and sale of liquors, to wit, it is prohibited absolutely throughout
the State except in incorporated towns and cities, and then can be
sold only when a license has been granted by the authorities of
the place.    The main question in this case is, whether the dispo-
sition by the plaintiff of liquors in the manner herein indicated
was in contravention of the statute.    Was it a sale of the prohib-
ited article?    This question has been much discussed in the
courts of other States.    They are widely divergent.    I will make
no attempt to reconcile them, preferring to rest my decision on
the case of *State* (Mayor, &c., of the city of Newark, prosecutor)
v. *Essex Club*, Supreme Court of New Jersey, November 17,
1890, 20 Atl. Rep., 769.    The case is similar to the present,
and in it are discussed the conflicting cases.    Without going into
this discussion, that case rests its reasons much on the case of
*State* v. *Lockyear*, 95 N. C., 633, and decides that the transac-
tion mentioned constituted a complete sale of liquor, having all its
elements, and decided the case against the Essex Club.    I hold
that the facts mentioned in this case constitute a sale of liquor by
the club, and that the club is liable to pay a license to the city
of Columbia; and therefore the plaintiff is not entitled to the
writ of prohibition, and the proceedings must be dismissed, and
it is so ordered.    I reserve to myself the privilege of giving my
reasons for this judgment more fully hereafter, and to file the
same as part of this case.

Afterwards his honor filed the following opinion:

Under the law of South Carolina, the sale of intoxicating liquor
is prohibited outside of incorporated cities, towns, and villages,
and is allowed within the corporate limits thereof only upon
license duly granted by the municipal authorities.    In some of
the cities, towns, and villages of the State it is prohibited by spe-
cial legislative enactment or by local option under sanction of
law.    The statute law is contained in chapter LV., pages 507,
508, sections 1731–1737 inclusive, of the General Statutes.    In
the city of Columbia licenses are granted by the city council.    On
23rd day of December, A. D. 1890, the city council ratified and
published an ordinance to regulate licenses for the year A. D.

1891, the 7th section of which reads as follows : "For a license to carry on any permanent or transient trade, business, or profession, the sums hereinafter mentioned shall be paid into the city treasury, in gold or silver coin, United States treasury notes, national bank notes. * * * *Club Rooms.*—All clubs or associations where liquor is disposed of for cash, checks, or otherwise, shall be required to take the regular liquor license per year, $200."

The Columbia Club having disregarded this ordinance was, on 14th of February, 1891, summoned to appear before the mayor of the city, to answer to the charge of doing business without a license, in violation of said ordinance. By its proper officer, the club appeared and denied the charge of retailing liquor without a license, and also denied the jurisdiction of the court. The result of the trial was a conviction and the imposition of a fine of twenty dollars, to be paid on or before the 17th of February, together with a license fee of two hundred dollars, or the establishment be closed by the chief of police. There was no evidence before me of the written sentence of the court, and the respondent, denying the foregoing statement, alleges that a fine of twenty dollars was imposed, and sentence suspended to allow the relator time to test its supposed legal rights. Accordingly, on 26th February, 1891, the relators exhibited before me at my chambers in Lexington, a petition in prohibition to prevent the city council of Columbia from executing the said alleged illegal sentence. A rule was issued, requiring the mayor to show cause at the next term of the Court of Common Pleas for Richland why a writ of prohibition should not issue, prohibiting him from proceeding further in the matter. Upon the petition and return to the rule, the case was fully argued before me in open court at Columbia, on 14th day of April, A. D. 1891, and upon the 15th April, 1891, I signed and filed a short order, prepared by counsel for the mayor, dismissing the proceedings in prohibition, and sustaining the judgment of the mayor ; and I reserved the right of giving my reasons for this judgment more at length as soon as I could get a moment of leisure.

The question submitted to the court was whether, under its rules and regulations, the Columbia Club is engaged in the sale

of intoxicating liquors, and consequently amenable to the aforesaid city ordinance. The club is a so-called social organization, incorporated under the laws of the State for social and literary purposes, with a limited number of resident members, a few non-resident and quite a limited number of distinguished honorary members. It occupies a suite of rooms in the city of Columbia, furnished with a small library and the newspapers and periodicals of the day, and fitted up in a manner and style conducive to the ease, comfort, and social enjoyment of its members and guests, among whom are occasionally the families and lady friends of the members, who are entertained with conversation, music, and dancing. The social standing of the club is high, and the rules and regulations are such that none but men of good social position are admitted to membership. Each active or resident member is required to pay an initiation fee of fifty dollars and a monthly assessment of two dollars ; each non-resident member is required to pay an initiation fee of twenty dollars and annual dues of ten dollars.

Among the refreshments provided by the managing committee with the funds of the society from time to time are choice liquors and cigars, which are distributed to the members when called for, by the servants of the club, at cost prices as fixed by the managing committee. The object is not to make profit out of the liquors, but merely to cover the cost price, and thus to replenish the stock ; nor is the purpose to evade the laws either of the city or State, but the association is *bona fide*, and governed by rules and regulations as judicious and stringent as those of similar clubs in the cities of the States of the Union. So far as the aims, objects, purposes, rules, and regulations of the club are concerned, there is no dispute, but all the facts are conceded. Nothing is alleged nor was anything attempted to be proved derogatory to the membership or conduct of the club, but all was conceded that would accord to it a constitution and standing as free from condemnation as any similar society in any city of the land. The sole question submitted to the court is, whether the club is amenable to the license law of the State, as embodied in the aforesaid ordinance of the city of Columbia.

It is not a question of motive or intent. He who carries a

deadly weapon concealed about his person contrary to the statute, violates the law, regardless of the motive which may prompt him to carry it; so he who sells intoxicating liquors in violation of the statute, cannot excuse himself by proof of good intention. The fact of sale without license constitutes the misdemeanor, without reference to the intent. If the club is engaged in the sale of intoxicating liquors by retail without license so to do, it is violating the law of the land and the ordinance of the city of Columbia, and is not entitled to the writ of prohibition prayed for in the petition.

It is conceded that it keeps on hand a goodly supply of choice liquors, purchased with the funds of the club; that they are the property of the corporation, and that no member can drink the same without paying therefor in cash, by check, or written order, and in the club rooms. The price is regulated by the managing committee, it is true, but nevertheless the mode of calling for, receiving, and paying for a drink and a cigar by a member of the club in its rooms, has the elements of a sale and purchase as complete as if one in a bar room or restaurant would order and pay for the same articles. Before the liquor is called for by the member, it is the property of the corporation; after it is delivered and paid for, it is the property of the member as an absolute purchaser. The goods of a cotton factory, fertilizer factory, or any corporation or company, belong to the corporate body or company, but the stockholder who wishes to become the sole owner of any part of the goods, must buy and pay for the same, and the change of ownership is as complete a sale as if the purchaser were a stranger to the corporation; all the elements of a sale are present in the one transaction as well as in the other.

The question is one of novel impression in this State, and until its argument before me, I was not aware that it had been passed upon by the courts of last resort in so many of the States of the Union. These decisions are conflicting, and cannot be wholly reconciled, although much of the conflict is owing to the difference in the language of the statutes of the States and city ordinances, and the manifest desire of the courts to exempt these clubs from the operation of prohibitory laws, whensoever it could be done with a fair and liberal interpretation of statutes. I feel

free, therefore, to follow the reasoning of these courts, which have given to statutes similar to ours a plain, common sense, and consistent interpretation, and an application which strikes at the root of the evil denounced. A member of the Columbia Club cannot drink its liquors without buying and paying therefor by the drink or in retail, nor can any one else do so except by and through a purchase of the article effected by a member.

In *Marmont* v. *State* (48 Ind., 21), the court, in deciding the case, said: "To constitute a sale, there must be a passing of the right or title to property for money, which the buyer pays or promises to pay to the seller for the thing bought or sold. When a firm purchases with partnership funds or upon credit a sack of coffee or a barrel of sugar, the coffee or sugar belongs to the firm; but when a part of each is taken out and transferred to a member of the firm, either for cash or on credit, a valid transfer has been effected from the firm to the individual member. So while the beer was in the keg, it was the common property of the society; but when a portion was withdrawn and delivered to a member of the society upon credit or for cash, the portion so withdrawn ceased to belong to the society, and became the separate property of the member receiving it, and the transaction invested him with the power to drink it himself, to give it away, to sell it, or throw it away."

In the case of *State* (Mayor, &c., of the city of Newark, prosecutor) v. *The Essex Club*, the Supreme Court of New Jersey, November 17, 1890, quoting with approval the Indiana case, proceeds to say: "Thus the title passed to the buyer and the consideration to the seller, presenting every quality requisite to a complete bargain and sale. It is wholly immaterial whether the sale is made in open view to all who apply or in the most secluded place, to which only the trusted few can gain admittance. The penalty of the statute is demanded against the sale without license, whether in public or in private." This latter case of *State* v. *Essex Club* is not only a recent case, but one based upon a prohibitory statute similar to ours, and decided by a court of recognized ability. The rules and regulations of the Essex Club were almost identical with those of the Columbia Club, and I can find no case more

directly in point, and none with the reasoning of which I am better satisfied. See 20 Atl. Rep., p. 769.

In 1885 there existed in the city of Raleigh, N. C., a duly incorporated society called the "Capital Club," organized for literary and social purposes, with rules and regulations very similar to those of the relator, the Columbia Club. Among other things, and incidental to the main purpose of the organization, the club furnished refreshments to its members, such as liquors, cigars, and meals, for their convenience and accommodation, and a small stock of spirituous liquors, wines, and beer was kept on hand and furnished to the members at a price fixed by the house committee of the same, and intended to be just sufficient to cover the cost; the object was not to make profit upon the liquors, wines, and beer so furnished; and in fact the prices thus fixed and paid failed to cover the entire cost, and the funds of the society arising from fees and dues of members had now and then to be resorted to in order to keep up the stock of liquors. In that year a prohibitory local option law for Wake County was passed by a vote of the people.

The steward of this club was indicted for violating this law; the jury found a special verdict, in which is fully set forth the rules of the club and the manner in which the steward, Lockyear, distributed the liquors and refreshments of the club to its members, and left it to the court to say whether or not it was a sale of liquor, and whether or not the defendant was guilty. The mode of purchasing the stock of liquors and distributing them to the members was precisely that prevailing in the Columbia Club. Upon the rendition of the special verdict by the jury, the Superior Court for Wake County acquitted Lockyear, the steward, but the State appealed to the Supreme Court and had the judgment of acquittal reversed—that court holding that such furnishing of liquors by the club to its members is a sale, and hence a violation of the prohibitory local option act.

The very sound opinion of the court, delivered by Chief Justice Smith, is in 95 N. C., 633; reported also in 59 American Reports. He quotes approvingly the case of *State* v. *Mercer*, 36 Iowa, 405, decided in 1871; the case of *Marmont* v. *State*, 48 Ind., 21, decided in 1874; and as more directly in point,

*Martin* v. *State*, 59 Ala., 34. These cases are examined and approved, whilst the following cases are discussed and disapproved, viz., *Seim* v. *State*, 55 Md., 565, reported in 39 American Reports; *Tennessee Club of Memphis* v. *Dwyer*, 11 Lea, 452, reported in 47 American Reports, 298, decided in 1883; *Commonwealth* v. *Smith*, 102 Mass., 144, and *Graff* v. *Evans*, 8 Q. B. Div., 373, decided in 1881. These last named cases are all reviewed by the Supreme Court of North Carolina in the aforesaid opinion of Chief Justice Smith, and again in the able opinion of the Supreme Court of New Jersey in the above cited case of the Essex Club, and the doctrine of said adverse cases I think most successfully refuted.

The fact is, that all prohibitory or license laws could be evaded and set at naught, if associations of the kind in question are held to be exempt from their provisions, because it is readily perceived that similar clubs could be established in every ward in our cities, and in every town, village, and township in the State, and thus embrace the great body of our adult male population in organizations having as an attractive feature a well regulated method of retailing to the members spirituous liquors, wines, and malt liquors. I think the Supreme Courts of North Carolina, Alabama, New Jersey, Iowa, and Indiana have taken a sounder and more practical view of this question than the courts of Maryland, Massachusetts, and the Q. B. Div. of the English court, in the cases cited. My impression is that the Maryland case above cited was decided by a divided court, and that more recently a different doctrine has been there established; so that the great weight of authority now is that from the wine cellars or liquor rooms of our various social and literary clubs the mode of dispensing drinks to members amounts to a sale by retail, and that these societies are amenable in this incidental feature to the prohibitory and license laws of the land.

I have thus given more at length my reason for refusing the writ of prohibition sued for by the relator, the Columbia Club, and for sustaining the action of the mayor and city council of Columbia in the premises. Let this opinion be filed and constitute a part of the judgment of the court and of the record in the case.

The Columbia Club, relator, appealed.

*Mr. A. J. Green*, for appellant.

*Mr. J. T. Rhett*, city attorney, contra.

January 7, 1892.   The opinion of the court was delivered by
MR. JUSTICE McGOWAN.   The Columbia Club, relator, is a
duly incorporated organization for social and literary purposes,
with power to make such rules and regulations as they shall deem
proper.   The club rooms are situated in the city of Columbia,
used exclusively by the members, and are intended to provide for
them a place where they, at small cost, can have and enjoy the
privacy and privileges of a well conducted home, together with
such intercourse and amusement as are consistent with the rules
and objects.   And to this end they established the following rules
and regulations : A small library is provided and furnished with
the periodicals and literature of the day.   The club is governed
by a president, a vice president, and a managing committee, who
are elected by the club.   Among the duties of the managing com-
mittee is to provide the necessary accommodations, servants, &c.,
for the members, and to have a general supervision of the affairs
of the club.   Before any person can become a member of the
club, he is required to be recommended by at least three active
members, his name passed upon by the managing committee, and
submitted to the club for election.   All members (except honor-
ary, limited to seven in number, and to which only distinguished
citizens of the State or of the United States are eligible), are
required to pay an initiation fee and monthly or annual dues, from
which sources the club is maintained.   That is to say, each resi-
dent member pays an initiation fee of fifty dollars and a monthly
assessment of two dollars ; each non-resident, a fee upon initia-
tion of twenty dollars and annual dues of ten dollars ; a tem-
porary member, a fee of ten dollars for three months.   The mem-
bership now and at all times hereafter not to exceed one hundred
and four (104) members of all classes.

It seems that among the refreshments purchased and kept on
hand, with the funds of the members obtained as aforesaid, the

managing committee from time to time provides a small quantity of liquors and cigars, which are in the keeping of said committee, and are distributed to the members as they require the same by the servants of the club, the members placing an amount of money, equivalent to the cost price of the article or proportion thereof so furnished, which amount is fixed by the managing committee, and is not intended for profit, but solely to cover the cost thereof, and is expended to replace the articles so consumed; but as matter of fact the same does not cover the cost, but it is necessary to maintain the articles aforesaid to use a portion of the annual dues and assessments for this purpose, &c.

On February 14, 1891, the club, by its officers, was summoned to appear before the Hon. F. W. McMaster, mayor of the city of Columbia, to answer to the charge of "doing business without a license," in violation of an ordinance of the city. The officers of the club appeared and denied the charge and the jurisdiction of the court in the premises. The city council, however, pronounced judgment against the club, and sentenced it to pay a fine of twenty dollars, and unless the same, together with an alleged license fee of $200, was paid by February 27, then instant, ordered the chief of police to close the rooms of the club. Thereupon the relator club petitioned the Court of Common Pleas for a writ of prohibition to restrain the mayor and all officers acting under him from proceeding further in the premises, upon the grounds that said action of the municipal court was without jurisdiction, that the city had not imposed any license fee or tax upon the club, and in fact has no rightful authority to do so, and that the sentence of the court was wholly without authority of law.

The mayor was ordered to show cause why the writ should not be granted. The application was heard by his honor, Judge Hudson, who, among other things, found as follows, viz.: "The object of the club was not to make profit out of the liquors, but merely to cover the cost price, and thus to replenish the stock; nor was the purpose to evade the laws either of the city or State, but the association is *bona fide* and governed by rules and regulations as judicious and stringent as those of similar clubs in the cities of other States. So far as the aims, objects, purposes, rules, and regulations of the club are concerned, there is no dispute.

Nothing is alleged, nor was anything attempted to be proved, derogatory to the membership or conduct of the club, but all was conceded that would allow to it a constitution and standing as free from condemnation as any similar society in any city of the land," &c. His honor, however, held that the admitted facts "constitute a sale of liquors by the club," and it was liable to pay a license fee of $200 to the city of Columbia, and therefore dismissed the petition.

The club appeals to this court, alleging error on the part of the Circuit Judge, upon the following among other grounds : 1. Because the city has no power to impose a license fee or tax upon social organizations, such as the relator. 2. Because the city has not imposed a license fee or tax upon said organization. 3. Because the sentence of the municipal court is without jurisdiction and void, in that it is not authorized by any ordinance of the city, and imposes a greater punishment than its charter allows.

The question whether social clubs, which raise the means by contribution and then distribute refeshments among its own members, are liable to a license tax for retailing spirituous liquors, has been considered by many of the courts of the country, both in England and America. The cases seem not to be in accord. We have examined many of them in the hope of being able to reconcile them, but have found it impossible to do so. We think, however, that much of the seeming conflict arises from two causes : *first*, where the alleged club, as a matter of fact, is not *bona fide* what it purports to be, but is a mere device to evade the law against retailing without a license. In all such cases, of course, they are liable. And, *second*, from the difference in the terms of the various acts upon the subject, each court construing for itself the laws and regulations of its own State. In the case before us, the difficulty first above indicated is not in our way ; for it has been conceded and formally found that the Columbia Club is a *bona fide* social organization for the uses and purposes declared in its charter.

The question then is, whether under our laws, properly construed, the city authorities of Columbia had the right to require the Columbia Club to take out a $200 license for the year 1891, and to pay a fine of $20 for not having done so. It seems that

there are two kinds of licenses recognized : one to do some kind
of business called a "business license," and the other to retail
liquor called a "liquor license."   With the former kind we have
no concern here, for it is not alleged that the club, as such,
is engaged in any kind of "trade, business, or profession."   We
have to do only with the liquor license, and it seems that all the
different provisions of our law upon that subject are collected in
chapter LV. of the General Statutes, entitled "Of Licenses."
Section 1731 of that chapter declares that "no license for the sale
of spirituous liquors shall be granted in South Carolina outside
of the incorporated cities, towns, and villages of this State, and
it shall be unlawful for any person or persons to sell such liquors
without a license so to do."   Section 1736 of the same chapter
provides that "the proper municipal authorities of all incorporated
cities, towns, and villages shall have power to grant licenses to retail
spirituous liquors inside the incorporate limits, &c., to keepers of
drinking saloons and eating houses, apart from taverns, and to
fix the price of the same, the person to whom the same is grant-
ed being first recommended by six responsible tax payers of his
neighborhood, and entering into a bond in the sum of $1,000 for
the keeping of an orderly house," &c.   Section 1745 provides,
among other things, that "all persons engaged in retailing liquors
under licenses granted in accordance with this chapter, shall ex-
pose their licenses to public view in their chief place of making
sales, &c. * * * And every person taking out a license for sale
of spirituous liquors as aforesaid, shall sell the same in a room
fronting the public street, without any screen, curtain, or other
device for preventing the passing public from fully viewing what
may be transpiring within," &c.

Now, considering these provisions together, what construction
should be placed upon them ?   They are penal in their nature,
and should be strictly construed.   Is it not perfectly man-
ifest that, by the terms used, the legislature did not in-
tend to embrace social organizations such as the Columbia
Club; but, on the contrary, that the true intent and meaning of
all these provisions was to include only "the keepers of drinking
saloons," &c.; that is to say, a well known class of persons who

are engaged in the business of retailing liquor for a profit as a livelihood? *Expressio unius est exclusio alterius.*

But it appears that the corporate authorities of the city, on the 22 of December, 1890, passed an ordinance "to regulate licenses for the year 1891." which, it is suggested, supplemented the acts of the legislature upon the subject, and enlarged the power of the city in the matter of granting licenses. The seventh section of this ordinance reads as follows, viz.: "For a license to carry on any permanent or transient trade, business, or profession, the sums hereafter mentioned shall be paid into the city treasury in gold or silver coin, United States treasury notes. * * * *Club Rooms.* All clubs or associations where liquor is disposed of for cash, checks, or otherwise, shall be required to take the regular liquor license per year, $200." The first paragraph of this section clearly relates to business licenses, but the last paragraph, in relation to "Club Rooms," seems to have been an attempt to make a new law as to the persons who may be required to take out liquor licenses; but it must not be overlooked that there is no such thing as original legislative municipal authority. Incorporated cities have only the power granted to them by the legislature—nothing more and nothing less. Therefore this ordinance must be construed in subordination to the general law upon the subject. *Heise* v. *Town Council,* 6 Rich., 404; *State* v. *Williams,* 11 S. C., 292.

The question then recurs, whether the regulations adopted by the club for distributing their liquors among their own members, "constitute a sale" in the sense of section 1731 of the General Statutes, which makes it unlawful "to sell liquors without a license so to do." As I understand it, the law does not prohibit the use of liquors, but merely regulates the sale by indicating certain persons who may sell upon certain conditions, one of which is the production of a license, which can only be procured by paying for the same a fee or tax. The club owned the liquor, and we suppose that each of its members had the right to use his part of them as he pleased. When he called for his share or any part of it, and the same was delivered to him, subject to account, can we say that was an "unlawful sale" in the sense of the law? It seems to us that such view is very technical, and that the more

reasonable construction is, that the regulations of the club amounted substantially to a method of dividing the property among its owners.

As before stated, the authorities upon this subject do not seem to be in accord. We must, however, decide the case according to our construction of our own laws; and, looking only for the intention of the law makers, we think the proper doctrine is announced in the text of the American and English Encyclopedia of Law (11 vol., title, intoxicating liquors, page 727), as follows: "*Social Clubs.* The distribution of liquors by a *bona fide* club among its members is not 'a sale' within the inhibition of a liquor law, even though the person receiving the liquor gives money in return for it. It is otherwise, however, where such club is simply a device, resorted to as a means of evading the statute"—citing in the notes numerous cases, which we will not attempt to review. See *Graff* v. *Evans*, 8 Q. B. Div., 373; *Seim* v. *State*, 55 Md., 566; *Chesapeake Club* v. *State*, 63 *Id.*, 460; *Commonwealth* v. *Smith*, 102 Mass., 147; *Com.* v. *Pomphret*, 137 *Id.*, 564; *Tennessee Club* v. *Dwyer*, 11 Lea, 452; *Barden County Treasurer* v. *Montana Club*, 10 Mont., 330; *Piedmont Club* v. *Commonwealth*, 12 S. E. Rep., 963.

In *Graff* v. *Evans, supra*, Mr. Justice Field said: "In construing a statute like the present, by which a penalty is imposed, we must look strictly at the language in order to see whether the person against whom the penalty is sought to be enforced has committed any offence within the section. * * * The section must be construed by looking at the language used, and taking a large view of the object of the legislation. The enactment is limited to 'sales' of intoxicating liquors, and only seems aimed at sales made by retail dealers. The question is, whether Graff effected 'a sale.' I think not. Any member was entitled to obtain the goods on payment of the price. A sale involves the element of a bargain. There was no bargain here, nor any contract with respect to the goods," &c., &c.

In *Piedmont Club* v. *Commonwealth, supra*, decided as lately as March, 1891, and the last judicial utterance upon the subject brought to our notice, the Appeal Court of Virginia unanimously

held' as follows : "A club formed for social purposes allows its members only, from its stock kept for the purpose, to order liquor for himself and such friends as the rules of the club allow him to invite as guests, charging such member with liquors so ordered by him, no profit being made by the club. *Held*, this does not constitute a sale of liquor within the meaning of the act (Acts 1889–90, page 242) requiring license for sale of liquor, and no license is required, the charging each member for amount used by him being a mode of apportionment or assessment of the proportionate expense to be borne by him," &c., &c. We are unable to distinguish this case from that of the Piedmont Club of Lynchburg above referred to.

It is the judgment of this court, that the judgment of the Circuit Court be reversed, and the case be remanded to the Circuit Court for such orders as may be thought necessary to carry out the conclusions herein announced.