## HERMITAGE CLUB *v.* SHELTON.

### (*Nashville.* February 3, 1900.)

SOCIAL CLUBS. *Liable for privilege tax laid on liquor dealers.*

A social club chartered and organized under Acts 1875, Ch. 142, not for profit, but for social enjoyment, that maintains a clubhouse, keeps a stock of liquors, which is dispensed only to members and their nonresident guests, at a price fixed by a governing committee sufficient to cover the outlay in purchasing and serving the same, but not with a view to profit, and turns the proceeds received for such liquors into the treasury of the club, not for distribution, but to pay expenses, and pays United States revenue tax as a liquor dealer, is liable for the privilege tax imposed on liquor dealers by the revenue Act of 1899 (Ch. 432), classing social clubs that handle liquors for sale as liquor dealers, and making persons who pay United States revenue tax *prima facie* liable for said privilege tax.

Acts construed: Acts 1875, Ch. 142; Acts 1899, Ch. 432.

Case cited and distinguished: Tennessee Club *v.* Dwyer, 11 Lea, 452.

FROM DAVIDSON.

Appeal in error from Circuit Court of Davidson County. J. W. BONNER, J.

JOHN BERRY for Club.

J. A. CARTWRIGHT for Shelton.

BEARD, J. The question presented in this record is, Is plaintiff in error liable as a retail liquor

dealer to pay the privilege tax imposed on such dealer by Chapter 432 of the Acts of 1899?

The case was tried on an agreed statement of facts, which, so far as material, are as follows:

1. The Hermitage Club was chartered under the Act of 1875, Chap. 142, Sec. 1, providing for the organization of corporations not for profit, among which corporations "clubs for social enjoyment" are named.

2. Immediately after its organization the Hermitage Club obtained, and has since maintained, a club house upon High street, in the city of Nashville. At said club house it has always kept a stock of liquors, wines, beers and cigars, amounting to $700. Portions of wines, liquors, and beers have been dispensed from time to time by the association through a steward and servants of the club, but dispensed only to members and such guests of said members as were nonresidents, in such portions as members and such guests of said members did require, to be consumed by said members and guests in said club, at a price fixed by the governing committee of the club, at amounts sufficient to cover the outlay in purchasing and serving the same, not with a view of making a profit, which is expressly forbidden by the charter, but simply for the accommodation and convenience of its members, who may indulge in a social glass without resort to barrooms. The proceeds derived from said wines and

liquors were placed with the other money of the club, in a general fund, and expended in the repurchase of other wines and liquors and in defraying the general expenses of the club. No profit has ever been declared or paid to any of its members by the association, but whatever profit was made by the sales of liquors went back into the general fund.

It is agreed, further, that the association is a club not for profit, and was not organized to evade the license laws of the State.

3. The club has at all times maintained at its club house a reading room, where are kept a large number of current newspapers and periodicals, billiard and pool tables, all being maintained for and used by said members and their guests only.

4. The club pays a United States revenue tax as a liquor dealer. The Act in question, after classifying liquor dealers with merchants and fixing the amount of the privilege tax to be paid by them, graduating it according to the population of the town, taxing district, or city in which they do business, then defines such dealer to be "every person, company, or firm selling spirituous liquors, wines, or malt liquors, beer, or ale, or intoxicating bitters, or any medicated or adulterated cider, or any social club or association, incorporated or otherwise, which handles such liquors for sale."

The Act further provides that "the procuring of United States revenue license to [by?] wholesale or retail liquor dealers shall be taken as *prima facie* evidence that the parties are in a wholesale or retail liquor business, and are subject to State and county taxes, unless established by proof that they are not so engaged."

The question to be determined is, Is this club, under the agreed statement of facts, a liquor dealer within the definition of the statute? Having taken out a United States revenue license, as such, *prima facie* it is. Has it succeeded in rebutting this presumption, upon the record as made up? That it is an organization of gentlemen for the purpose of friendly intercourse, and who, to that end, have secured and for years have occupied a comfortable club house, to which none but members of the organization and their friends could resort, cannot be availed of in repelling this presumption. For in this regard it answers directly to a portion of this definition. It is a "social club," and the statute expressly applies to such a club.

Nor, in determining whether it is within the purview of the statute, is it of any importance that the club was not instituted for individual profit, and that profits or dividends have not, in fact, ever been paid to its members. In this respect, all clubs of like character organized under Ch. 142 of the Acts of 1875 are on the same

basis.    It is one of the essentials of their corporate existence that they shall not be in this sense profit-earning institutions.    And there is no other Act in our statute book which permits the char- tering of such a club.    All derive their vitality from the same Act, so that this quality, common to all, cannot be of any service in repelling the statutory presumption which arises by reason of its possession of the United States license.

In fact, it is evident that clubs such as is plaintiff in error, were in the mind of the Leg- islature.    For not only does the Act touch, in this definition, a social club, but one either unin- corporated or incorporated—that is, necessarily one deriving its charter under the Act of 1875.

To this point it is clear that nothing has been suggested that serves to repel the presumption against it which the statute has raised; on the contrary, what has been so far said adds force to the presumption.

But it is not the social club organized under that Act that *per se* is subject to this privilege tax, but only when it "handles liquors for sale." Having liquors on hand, dispensing them as it does, and doing this under the cover or protection of a United States revenue license, has plaintiff in error "established by proof" that in doing so it has not by that act been selling them?

It is somewhat significant that in the agreed statement of facts, the transaction which takes place

when a member or his guest orders his liquors and pays for it is called a sale. This occurs in the following paragraph: "No profit has ever been declared or paid to any of its members by the association, but whatever profit was made by the sales of liquors went back into the general fund." While this should not be taken as a concession of plaintiff in error to bring it within the operation of the Act of 1899, it does show a difficulty in defining what does take place when the liquor is furnished, without speaking of it as a sale.

But conceding, as we do, that this use of terms will not make that a sale which is not, the question remains, Does the record show satisfactorily that the liquors dispensed by the club are not in fact sold by it? While profit is not an essential to a perfected sale, yet if it was, it is apparent in this case that profit is earned in the handling of its liquors. It is true that this profit does not go to the members and under its charter could not do so. But it does "go into a general fund" and that fund is not used alone to replace that which has been consumed, but in defraying the general expenses of the club." The price of the liquors is fixed by the governing committee, but it is at a figure to cover not only "the outlay in purchasing" but also the cost of "serving the same."

In addition, not only is liquor dispensed to

members, but also to guests as they may require. The same methods are pursued in both cases, and the proceeds, including the equivalent for the outlay "whatever of profit was made" by these "sales of liquors, went back into the general fund."

Upon these admitted facts, can we say that the plaintiff "has established by proof" that it is not within the terms of the Act in question? We think not. But it is insisted that the case of *Tennessee Club* v. *Dwyer,* 11 Lea, 452, has adjudicated this question, and upon similar facts to these in the present record, has determined that a social club, such as is the plaintiff in error, is not in the sense of the law a liquor dealer. The reasoning and authority of that case are fully recognized by the Court, but we do not think its conclusions controlling in the present. The statutes involved in the two cases are radically different. The Act of 1881, Ch. 149, Sec. 4, under which the privilege tax was sought to be enforced in that case, provides that "liquor dealers should be taxed as other merchants." There was nothing in the Act to indicate that it was the purpose of the Legislature to impose this tax upon any others than "those who engaged in the retailing of liquors as a business." In the Act of 1899 the evident intention of the Legislature is to make a new departure, and to give the terms "liquor dealers" a far wider application.

Its defining clause greatly extends the meaning of these words. It embraces, with others, a "social club" *eo nomine,* and then, under the condition already named, places the burden on such a club handling liquors of establishing "that they are not handled for sale."

Again, in that case, the fact was found by the Court that liquors were "not sold for or at a profit, but the price the members are [were] required to pay for them" was "regulated by the governing committee" at "less than the original cost," and the deficit thus occurring was made good out of admission fees and monthly dues paid by members. In this case, however, profits are made, which go into the general fund of the corporation, and contribute to the running expenses of the club. In view of this fact, if the record had disclosed that revenue sufficient to replace the liquors dispensed, and, beside that, the profits earned had been ample to pay all the current expenses of the club, it could hardly be maintained that this would not be a handling for sale. We do not think the force of the suggestion is weakened because they simply fall short of doing this.

We have examined the cases cited and commented upon in the unusually able brief of the counsel for plaintiff in error, but none of them is more apposite or presents his contention with more clearness or force, than does the opinion of

Cooper, J., in *Tennessee Club* v. *Dwyer, supra.* They cannot add strength to what is there said. They were not construing statutes, of which the purpose to embrace a social club was as unmistakable as this. For if this club and others so organized are not within the legislative intent as expressed in this Act, it is impossible to apply the language used to any other.

The judgment of the Court below is affirmed.