DAN MORIARTY *v.* STATE.[1]

(*Knoxville.* September Term, 1909.)

1. **INTOXICATING LIQUORS.** A bona fide fraternal lodge furnishing its members liquors at cost is not engaged in sales thereof so as to be subject to tax, when.

Where a *bona fide* incorporated lodge as a subordinate lodge of a fraternal benevolent and social organization, as that of the Elks, maintains a building for the convenience and comfort of its members, with the appurtenances of a social club; and in its buffet furnishes its members, but no one else, refreshments, including intoxicating liquors, as a purely incidental matter, for the cost thereof, with that of "service" added, without any profit, such lodge is not engaged in handling intoxicating liquors for sale within the sense of the revenue law (Acts 1907, ch. 541), imposing a tax upon every person, social club, etc., selling intoxicating liquors.

Acts cited and construed: Acts 1907, ch. 541.

Case cited and approved: Club v. Dwyer, 11 Lea, 452.

Case cited and distinguished: Club v. Shelton, 104 Tenn., 101.

Cases pro and con in other jurisdictions cited in the opinion, pages 444, 445.

2. **SAME.** Same. Servant of lodge is not guilty of misdemeanor as for selling, when the lodge is not guilty.

The servant of such lodge, engaged in doing the service of furnishing liquor to the members, as shown in the preceding head-

---

[1]As to applicability of liquor laws to social club dispensing liquors to members, see notes to South Shore Country Club v. People (Ill.), 12 L. R. A. (N. S.), 519; Cuzner v. California Club (Cal.), 20 L. R. A. (N. S.), 1095, and Manning v. Canon City (Colo.), 23 L. R. A. (N. S.), 192.

Moriarty v. State.

note, is not engaged in selling or aiding in the sale of liquors in violation of Acts 1899, ch. 161, sec. 1, and is, therefore, not guilty of a misdemeanor in so serving.    (*Post, pp.* 442, 443, 453.)

Acts cited and construed: Acts 1899, ch. 161, sec. 1; Acts 1907, ch. 541.

3. SAME. Clubs for illegal sale of liquor will be held amenable to the law.

Where a club is chartered and organized to evade, if possible, under the forms of law, the statutes prohibiting the sale of intoxicating liquors, and to furnish intoxicating liquors to its members as the principal purpose or one of the chief objects of its organization, and not as a mere incident, or to sell the same for a profit, the disguise should and will be uncovered, and the club and its members made amenable to the law so violated. (*Post, pp.* 445, 453, 454.)

---

FROM KNOX.

---

Appeal in error from the Criminal Court of Knox County.—T. A. R. NELSON, Judge.

J. K. GREEN, J. W. CULTON, S. G. HEISKELL, and J. C. HARRIS, for Moriarty.

ASSISTANT ATTORNEY-GENERAL FAW, for State.

---

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

The plaintiff in error, upon an indictment charging him with unlawfully selling intoxicating liquors with-

out license, was convicted, and a fine of $100 was assessed against him, and it was adjudged that, in addition, he be confined in the county workhouse for six months.

The facts on which this conviction was made are, briefly, as follows: The Benevolent and Protective Order of Elks of the United States of America is a fraternal benevolent and social organization, with about 1100 subordinate lodges, consisting of near 400,000 members, located in the different parts of the United States. One of these lodges is known as the Knoxville Lodge of Elks, No. 160. This lodge is incorporated under the laws of Tennessee, with its *situs* in the city of Knoxville, in this State, and has a membership of several hundred. It also has a large building in the city of Knoxville, fitted up for the convenience and comfort of its members, and having all the appurtenances of a social club. Within this building and a part thereof is a small room equipped and used as a buffet, where members of the lodge, and no one else, could obtain refreshments, including intoxicating liquors. All the supplies used in this buffet were furnished by and were the property of the lodge. The trustees of the lodge employed the plaintiff in error as steward, whose duty it was, among other things, in the operation of this buffet to serve the members, upon the presentation of printed checks, theretofore purchased by them from the lodge, intoxicating liquors. These checks had stamped upon them: "Good for service only,

Moriarty v. State.

and not transferable." Each of these checks represented the price of one drink, and this price, fixed by the lodge, was the equivalent only of the cost of the drink, with that of "service" added. The furnishing of a drink to one of the members of the lodge by plaintiff in error in exchange for one of these checks is the basis of this indictment and conviction.

It is proper to say that there is no claim on this record that this lodge is not organized under the statute. as a *bona fide* one for social and benevolent purposes, or that its charter was obtained as a cloak or device to serve its incorporators and members in the sale and purchase of intoxicants, in evasion of the law prohibiting such sales without license. Upon these facts, the question is: Was plaintiff in error guilty of the offense charged?

Within the last few years many cases of a similar character to the present have reached a number of the courts of last resort in this country, and it will be found upon examination that the opinions of these courts on the question involved are irreconcilable. Thus it has been held in one class of these cases that a *bona fide* social club, organized for the purpose of establishing a library in connection with the clubrooms for social enjoyment, may serve its members and their invited guests with intoxicating liquors, the members only paying therefor, the money so received being used to replenish the stock, but insufficient for that purpose, without being liable to pay license required from re-

tail liquor dealers. *State* v. *Austin Club,* 89 Tex., 20, 33 S. W., 113, 30 L. R. A., 500; *Piedmont Club* v. *Com.,* 87 Va., 540, 12 S. E., 963.

There is still another class in which it has been held that the dispensing of intoxicants to its members by a *bona fide* social club, where the liquors are held in common, is not a sale of liquors within the meaning of the license laws. *State, ex rel. Bell,* v. *St. Louis Club,* 125 Mo., 308, 28 S. W., 604, 26 L. R. A., 573; *State, ex rel. Columbia Club,* v. *McMaster,* 35 S. C., 1, 14 S. E., 290, 28 Am. St. Rep., 826.

In *Barden* v. *Montana Club,* 10 Mont., 330, 25 Pac., 1042, 11 L. R. A., 593, 24 Am. St. Rep., 27, it was held that a social club, by reason of keeping a bar and furnishing liquor to its members are invited guests, where such liquor was not sold for a profit, and the club was not a device for evading the laws as to the sale of such liquors, was not subject to the license tax imposed by the statute on "all persons who deal in, sell or dispose of" intoxicating liquors.

On the other hand, there are a number of courts of high character holding, as did the supreme court of Illinois, in *South Shore Country Club* v. *People,* 228 Ill., 75, 81 N. E., 805, 12 L. R. A. (N. S.), 519, 119 Am. St. Rep., 417, that "an incorporated social club, organized in good faith for pleasure, social recreation, and outdoor sports, with a limited membership, a clubhouse elaborate in its appointments, including library, reading room, card and billiard rooms, dining room,

and restaurant, with outside conveniences for exercise and sport, and a place where intoxicating liquors were dispensed to and paid for by the members, without profit," was within the statute requiring a license "to conduct a dramshop." In line with that case may be cited *Martin* v. *State,* 59 Ala., 34; *State* v. *Neis,* 108 N. C., 787, 13 S. E., 225, 12 L. R. A., 412; *Army and Navy Club* v. *District of Columbia,* 8 App. D. C., 544; *Mohrman* v. *State,* 105 Ga., 709, 32 S. E., 143, 43 L. R. A., 398, 70 Am. St. Rep., 74. A full citation of cases on this subject, with an editorial review of the same, showing the varying views of the different courts, will be found in the notes to the *South Country Club Case,* supra, reported in 12 L. R. A. (N. S.), 519, and to *Barden* v. *Montana Club,* supra, 24 Am. St. Rep., 27. An examination of the cases will show that, while all are determined with regard to existing statutes, yet, in those involving the dispensing of intoxicants for a price to members and guests in a *bona fide* club, that the real conflict grows out of the different views entertained by courts as to what constitutes a "sale," within statutes requiring payment of a privilege tax for retailing intoxicants. All the authorities agree in holding that, where clubs are formed for the evident purpose of evading the liquor laws, such course will not be tolerated; so it is, that these cases cannot be placed on one side or the other in a controversy involving the statutory right of a *bona fide* club to dispense intoxicants for a price to its members.

Mr. Black, in his recent work on Intoxicating Liquors (section 142, p. 185), after a review of the authorities, sums up and concludes as follows: "Upon the whole, therefore, notwithstanding some conflicting rulings, the rational conclusion is that the intent must govern. On the one hand, if the object of the organization is merely to provide the members with a convenient method of obtaining a drink whenever they desire it, or if form of membership is no more than a pretense, so that any person, without discrimination, can procure liquor by signing his name in a book, or buying a ticket or a chip, thus enabling the proprietor to conduct an illicit traffic, then it falls within the terms of the law; but, on the other hand, if the club is organized and conducted in good faith, with a limited and selected membership, really owning its property in common, and formed for social, literary, artistic, or other purposes, to which the furnishing of liquors to its members would be merely incidental, in the same way and to the same extent that the supplying of dinners or daily papers might be, then it cannot be considered as within the purpose or the letter of the law."

Coming, now, to our own decisions, the first case in which the question here involved was considered is that of *Tennessee Club* v. *Dwyer*, 11 Lea, 452, 47 Am. Rep., 298. The Tennessee Club, of Memphis, was a social club, organized under Acts 1875, c. 142, sec. 1, subsecs. 3, 5, and maintained a library, gave musical entertainments, afforded meals for its members,

and kept a small stock of liquors for the use of its members, who paid for each drink as it was taken. No profit was made for the club upon the liquor so sold, but the stock was in part kept up by the monthly dues of members. The opinion in the case shows that one Dwyer, as clerk of the county court, claiming that the club was under obligation to pay the privilege tax required by section 4 of chapter 149 of the Acts of 1881, from retail liquor dealers, upon a refusal to pay, threatened a distress warrant, when a bill was filed by the club, setting out the facts hereinbefore recited, and asking that he be enjoined from issuing such warrants, or "seeking in any manner to hold complainant accountable, or proceed against it as a retail liquor dealer." This injunction was granted; but the chancellor, upon motion of the defendant, dismissed the bill for want of equity on its face, and the case was then brought by the complainant to this court.

The clause in the act of 1881, relating to the privilege tax required of retail liquor dealers, and under which the county court clerk demanded the tax in question, was as follows: "Where they do business at any place not in a city or town, or in a city or town of one thousand inhabitants, or less, $150 per annum; in a city or town of more than one thousand inhabitants and less than five thousand, $150 per annum; in a city, or town, of five thousand inhabitants or more, $250, quarterly or semi-annually in the same proportion."

In the course of the opinion delivered by Cooke, J., it is said: "It cannot be controverted but that the complainant would have a right to purchase and keep liquors at its clubrooms for the use of its members, and to distribute it among them in any method it might deem proper, and to raise funds for the purpose of replenishing by assessments upon the members, and the mode adopted, or the form of a sale alone to its members of such a quantity for so much money, can be nothing more than a mode adopted of assessing each member in proportion to the amount he consumes, and cannot be distinguished in principle from that adopted in one of the cases referred to, of issuing checks to each member which entitles him to so much liquor . . . according to the amount of money he contributes. . . . Upon the whole case, as made by the bill, we conclude that the complainant was not a retail liquor dealer within the meaning of the statute, that it was not required to pay said tax or take out a license as such, and that the distress warrant was wrongfully issued and levied upon its property. . . ."

It is true that the court was aided in coming to the conclusion above announced, that it was not the purpose of the legislature to embrace clubs, organized and conducted as was the complainant, as retail liquor dealers, from the fact that the statute provided that retail liquor dealers should be taxed "as other merchants," and graded the tax "according to the population of the town or city in which such retail traffic is carried on,"

the court regarding this as indicating that it was only "retailers of liquors to the public" who were contemplated by the act; yet this was not the real ground of that decision, but rather that found in the excerpt set out above.

The next case arising in this State is that of *Hermitage Club* v. *Shelton*, 104 Tenn., 101, 56 S. W., 838, which, it is here insisted, overruled the Dwyer Case. There it was held that the Hermitage Club, upon the agreed statement of facts, was liable to pay the privilege tax imposed on liquor dealers by chapter 432 of the Acts of 1899. It is insisted that that case is conclusive authority to sustain the conviction in the present case. It is true that the club in that case, as in the present, was a *bona fide* social club, organized or chartered under the act of 1875, and that the tax then claimed, the legality of which was sustained by this court, was under an act similar in terms to the one involved in the present controversy. The act of 1899, after classifying liquor dealers with merchants and fixing the amount of privilege tax to be paid by them, graduating it according to the population of the town, taxing district, or city in which they do business, then defined such dealer to be "every person, company, or firm, selling spirituous liquors, wines, or malt liquors, beer or ale, or intoxicating bitters, or any medicated or adulterated cider, or any social club or association, incorporated or otherwise, which handled such liquors for sale." That act further provided that "the procur-

122 Tenn—29

ing of the United States revenue license by wholesale or retail liquor dealers shall be taken as *prima facie* evidence that the parties are in a wholesale or retail liquor business, and are subject to State and county taxes, unless established by proof that they are not so engaged."

The revenue act of 1907 (Acts 1907, c. 541), which was in existence at the time of the transaction which occurred which forms the basis of the indictment in this case, was similar in terms to those just quoted from the act of 1899. The distinction, if any, between that case and the present, is not to be found in the acts, but in the facts presented by the records in the two cases. In that it was conceded in the agreed statement of facts that the Hermitage Club had taken out a United States revenue license, covering the period of time for which the State and county were demanding a privilege tax. In the present case no such license had been secured. The question there was whether the Hermitage Club had succeeded in overcoming the *prima facie* case that it was engaged in the retail liquor business by reason of having secured United States revenue license, while in the present no such question arises. While it is said that a "social club" was in the mind of the legislature in the act of 1899, yet it was conceded in the opinion that it was not such a club organized under the act of 1875 that "*per se* is subject to this privilege tax," but only when it "handles liquors for sale." This is followed by this question: "Having liquors on

Moriarty v. State.

hand, dispensing them as it does, and doing this under cover of protection of a United States revenue license, as plaintiff in error established by proof, that in doing so it has not by that act been selling them." In determining whether the club had, under the given state of facts, established by proof that it had not been engaged in selling liquors, it was said as follows: "While profit is not essential to a perfected sale, yet, if it was, it is apparent in this case that profit is earned in the handling of its liquors. It is true that this profit does not go to the members, and under its charter could not do so. But it does 'go into a general fund, and that fund is not used alone to replenish that which has been consumed, but in defraying the general expenses of the club.' . . . But, in addition, not only is liquor dispensed to members, but also to guests as they may require. The same methods are pursued in both cases, and the proceeds, including the equivalent for the outlay, 'whatever of profit was made' by these sales of liquor, went back into the general fund. So it was upon these admitted facts that it was held the club had failed to establish proof that it was not within the terms of the act in question."

From what has been said, the leading and controlling facts upon which that case went off are so dissimilar from those in the present case that we do not regard it as a controlling authority. Not only is this record without suggestion that there was a profit made in the disposing of the liquors in this Elks' Lodge, which was

carried into a "general fund" to be used as might be
in defraying the expenses of the club; but the fact is
that no profit was made, the price charged for the liq-
uor served being the simple equivalent of its price and
the cost of serving the same to the members. Further,
while in the Hermitage Club liquor was served to mem-
bers and invited guests, who stood on the same ground
and were served alike in the dispensing of intoxicants
and payment for the same, in the Elks' Lodge these
intoxicants were served alone to the members of the
lodge. In addition, in the one case, as has already been
said, the Hermitage Club had conceded its liability as
a retail liquor dealer by taking out a United States
revenue license; in the present case no such thing was
done.

In the course of the opinion in that case it was said:
"But it is insisted that the case of *Tennessee Club* v.
*Dwyer,* 11 Lea, 452 [47 Am. Rep., 298], had adjudicated
this question, and upon similar facts to these in the
present record has determined that a social club, such
as is the plaintiff in error, is not in the sense of the
law a liquor dealer. The reasoning and authority of
that case are fully recognized by the court; but we do
not think its conclusions controlling in the present."
Following this statement, the court marked the differ-
ence between the two cases. There, instead of over-
ruling the earlier case, it is said that it is recognized
and approved.

Moriarty v. State.

With the single exception that the act of 1899 and the act of 1907 embraced by name a "social club," and where engaged "in handling intoxicating liquors for sale," requiring it in such case to pay a retail liquor dealer's license, this case is as distinct in its facts from that as was the *Hermitage Club Case* from that of *Tennessee Club* v. *Dwyer.* We think the latter of these cases can be appealed to as authority by the plaintiff in error.

We are satisfied from the uncontroverted facts in the record that the Knoxville Lodge of Elks, like the present lodge, is a *bona fide* association, organized for social, fraternal, and benevolent purposes, and that the furnishing of refreshments, inclusive of intoxicants, to its members, is purely incidental, and that the lodge was not engaged in the "handling of liquor for sale," within the sense of the revenue act of 1907. From this it follows, of necessity, that the plaintiff in error, who was simply its employee and doing its service, was not guilty of the misdemeanor of either "selling or aiding in the sale" of "intoxicating liquors," created by section 1 of chapter 161 of the Acts of 1899.

It may be proper to observe, in conclusion, that it is a matter of common knowledge, of which we may take judicial notice, that since the legislative enactment of the various statutes, extending from time to time the territorial scope within which intoxicating liquors cannot be legally sold, clubs have sprung up in great numbers in different localities, and obtained charters, whose

apparent purpose is to evade, if possible, under the forms of law, the effect of these statutes. It is hardly necessary to say that such a club can find no warrant for its existence in the present holding. Whenever, in any case, the legality of its action in this regard is challenged by the State, it will be the duty of the court to scrutinize closely, in order to see that no such device is attended with success. In every case, when the serving of liquor to members, or others, is the principal purpose, or one of the chief objects, of such an organization, and not a mere incident, or when it is sold for a profit, this being carried into a general fund for meeting the expenses, or into a special fund for the payment of salaries, or for distribution among its members, or otherwise, the disguise should and will be uncovered, and the club and its members made amenable to the law.

The judgment of the trial court is reversed.