## OSCAR DIAMOND v. STATE.

### (*Knoxville.*    September Term, 1910.)

1. **PRIVILEGE TAXES.** A prohibited and unlicensable business may be taxed as a privilege.

A prohibited and unlicensable business may be taxed as a privilege, and the tax imposed may be collected. The fact that a business is made unlawful as a misdemeanor, and a license cannot be issued or obtained authorizing it, does not prevent the collection of the privilege tax imposed upon such business from a person engaged therein. A statute making the retailing of liquors a privilege and imposing a tax thereon applies to sales made in places where the business is prohibited and made a misdemeanor. The statute imposing the tax upon the business and the statute prohibiting the business are consistent, and tend to effect the same purpose, namely, the prevention of the sale of intoxicating liquors. (*Post, pp.* 352-357.)

Acts cited and construed: Acts 1909, ch. 479, sec. 16.

Cases cited and approved: Foster v. Speed, 120 Tenn., 470; Carpenter v. State, 120 Tenn., 586; Youngblood v. Sexton, 32 Mich., 406.

2. **INTOXICATING LIQUORS.** Statute imposing a privilege tax on sales, and making it a misdemeanor to exercise the privilege without paying the tax, is a part of the system of laws to suppress the traffic.

The provisions of the revenue law (Acts 1909, ch. 479, secs. 4, 14, and 16), in so far as they apply to the liquor traffic, by imposing a privilege tax upon the sales of intoxicating liquors, and making it a misdemeanor to exercise the privlege without first paying the prescribed tax, were intended as a part of the system of laws prohibiting and suppressing the liquor traffic. (*Post, p.* 357.)

Diamond v. State.

Acts cited and construed:   Acts 1909, ch. 479, secs. 4, 14, and 16.

3. SAME. In prosecution for the misdemeanor for selling liquors without paying the tax, certified copies of records in office of internal revenue collector are admissible.

Under the statute (Acts 1909, ch. 384) providing that, "in all prosecutions for violations of the laws of this State prohibiting the sale of intoxicating liquors," certified copies of the records in the office of the internal revenue collector showing that the accused has paid the internal special revenue tax as a liquor dealer, shall be admitted as competent evidence, and under the statute (Acts 1909, ch. 479, secs. 4, 14, and 16), imposing a tax on the privilege of selling intoxicating liquors and making it a misdemeanor for one to exercise the privilege without first paying the tax, such records are admissible and available in a prosecution for the misdemeanor denounced for selling intoxicating liquors without first paying the tax imposed on the privilege.   (*Post, pp.* 353-358.)

Acts cited and construed:   Acts 1909, ch. 384; ch. 479, secs. 4, 14, and 16.

4. SAME. Same. Selling liquor without paying the privilege tax imposed may be proved by possession of the internal revenue license.

The offense of exercising the privilege of selling intoxicating liquors without first paying the tax imposed by statute (Acts 1909, ch. 479, secs. 4, 14, and 16) is committed by one exercising the businesss of retailing or wholesaling intoxicating liquors without first paying the tax imposed, and the fact of the maintenance of such business may be proved by the possession of the internal revenue license, without proving a sale to some particular person, or without proving any sale at all.   (*Post, pp.* 357, 358.)

Acts cited and construed:   Acts 1899, ch. 161; Acts 1909, ch. 479, secs. 4, 14, and 16.

Cases cited and approved:   Club v. Shelton, 104 Tenn., 101; Moriarty v. State, 122 Tenn., 440, 449, 450; Austin v. Shelton, 122 Tenn., 634, 638, 645.

Diamond v. State.

5. CONSTITUTIONAL LAW. Statutes declaring an internal revenue special tax payment prima facie evidence that the party is in the liquor business, and making certified copies thereof admissible as competent evidence, are constitutional and valid.

The statute (Acts 1909, ch. 384) providing that, in all prosecutions for violations of the law prohibiting the sale of intoxicating liquors, certified copies of the records in the office of the internal revenue collector showing that the accused has paid the internal revenue special tax as a liquor dealer, or showing the issuance to the accused of an internal revenue special tax stamp shall be admitted as competent evidence, is constitutional and valid as indicating *prima facie* evidence of a violation of a prohibitory liquor law, as declared by another statute (Acts 1909, ch. 479, sec. 4). (*Post, pp.* 355, 358-362.)

Acts cited and construed: Acts 1909, ch. 384, and ch. 479, sec. 4.

Constitution cited as construed: Art. 1, secs. 6, 8, and 9.

Cases cited and approved: Railroads v. Crider, 91 Tenn., 498, 499; State v. Yardley, 95 Tenn., 546-564; Winton v. State, 77 Ark., 143; Hestand v. State, 28 Ky. Law Rep., 1315; State v. O'Connell, 82 Me., 30; State v. Monberg, 14 N. D., 291; Commonwealth v. Williams, 6 Gray (Mass.), 1; Commonwealth v. Minor, 88 Ky., 422; and numerous other cases appearing in a quotation from 17 Am. & Eng. Ency. of Law, on pages 359 and 360 of the opinion.

6. EVIDENCE. Statute making certain facts prima facie evidence does not bind jury to convict thereon, but requires the accused to explain.

A statute making the possession of an internal revenue license or other fact indicated by the Legislature *prima facie* evidence of the conducting of a prohibited business does not make it obligatory upon the jury to convict after the presentation of such evidence, but shifts upon the accused the duty to explain. (*Post, pp.* 362, 363.)

Diamond v. State.

7. CONSTITUTIONAL LAW. Statutes making certain facts conclusive proof are unconstitutional, and those making certain facts prima facie evidence are constitutional.

The rule is that statutes which undertake to make evidence of certain facts absolute or conclusive proof of guilt are unconstitutional; and those which merely declare the statutory presumptions affecting the burden of proof are constitutional and valid. (*Post, pp.* 362, 363.)

8. BILL OF EXCEPTIONS. Cannot supply the omission of the minutes to show action of trial judge upon plea in abatement to presentment.

Where the minutes of the circuit court, as sent up to the supreme court, show no action by the trial judge upon the plea in abatement filed as to matters transpiring before the grand jury when the presentment was found, the supreme court will not look to the recitals in the bill of exceptions on the subject, and will not review the error assigned that the circuit judge committed error in rendering judgment, with the intervention of a jury, upon such plea in abatement. (*Post, p.* 363.)

9. SUPREME COURT PRACTICE. Error inflicting punishment different from that prescribed by statute will be corrected in supreme court's judgment.

Where the judgment of the trial court inflicts a punishment upon the accused found guilty of a statutory offense different from that prescribed by the statute, the error will be corrected by the supreme court in its judgment, so as to conform to the statute. (*Post, pp* 363.)

Acts cited and construed: Acts 1909, ch. 479, sec. 16.

Cases cited and approved: Cronan v. State, 113 Tenn., 539; Pressly v. State, 114 Tenn., 534.

FROM SCOTT.

Appeal in error from the Circuit Court of Scott County. G. MC. HENDERSON, Judge.

J. C. J. WILLIAMS, for Diamond.

ASSISTANT ATTORNEY-GENERAL FAW, for State.

MR. JUSTICE NEIL delivered the opinion of the Court.

The plaintiff in error was arrainged before the circuit court of Scott county on a presentment found at the October term, 1909, charging that the said Oscar Diamond, "on the first day of July, 1909, in the State and county aforesaid, on the day and year aforesaid, did unlawfully sell intoxicating liquors for a valuable consideration without first having taken out the license, giving the bond, and taking the oath according to law." He was convicted and sentenced to pay a fine of $100, and to suffer one day's confinement in the county jail. From this judgment he appealed to this court, and has here assigned errors.

The assignments, so far as they need be noticed, present the single question whether the plaintiff in error was properly convicted upon the certificate of the United States internal revenue collector alone, showing a license to him as a retail liquor dealer, without evidence that he had made a sale to any particular individual. The State introduced no other evidence in the trial court, and the plaintiff in error introduced none.

The presentment was found under chapter 479, sec. 16, Acts of 1909, taken in connection with section 14, and that part of section 4 which relates to liquor dealers. The latter reads:

"Sec. 4.   Be it further enacted, that each vocation, occupation, and business hereinafter named in this section is hereby declared to be a privilege, and the rate of taxation on such privilege shall be as hereinafter fixed, which privilege tax shall be paid to the county court clerk as provided by law for the collection of revenue.   .   .   .   .

## "LIQUOR DEALERS.

Wholesale, and, in addition, taxed as other
  merchants .......................... $500 00
Retail, taxed as other merchants, and in addi-
  tion, shall pay as follows: In cities, taxing
  districts or towns of 6,000 inhabitants or
  over, each per annum .................  500 00
At any place, city, taxing district, or town of
  less than 6,000 inhabitants, each, per annum  500 00
Persons selling beer or any quantity of liquor
  on steamboats, flatboats, or any other vessel
  or water craft or from railroad cars, shall
  pay a tax each, in lieu of all other taxes to be
  paid in any county they may elect, per an-
  num ...... ...... ...... ...... ........  500 00

"Persons selling liquor in quantities of one quart or more, except manufacturers selling to dealers in original packages of not less than five gallons, are wholesale dealers, and persons selling smaller quantities than five gallons are retail dealers; and the tax on liquor dealers applies to all drug stores, except in uses

of wine for sacramental purposes and alcohol for domestic purposes. No producers of grape wine, where they raise and make the wine themselves, shall pay any privilege tax for selling the same.

"Provided they shall not sell in quantities of less than one and a half gallons.

"Liquor dealers are defined as every person, company or firm selling spirituous, vinous or malt liquors, beer or ale, or intoxicating bitters, or any medicated or adulterated cider, or any social club or association, incorporated or otherwise, which handles such liquors for sale. The procuring of United States revenue license to wholesale or retail liquor dealers shall be taken as prima facie evidence that the parties are in the wholesale or retail liquor business, and are subject to State and county taxes, unless established by proof that they are not so engaged. Upon any clerk's receiving knowledge of such internal revenue license, he shall have a right to collect the taxes by distress warrants.

"Provided, that nothing in this act shall authorize or legalize the sale of liquors. . . ."

"Sec. 14. Be it further enacted, That any and all parties, firms, and corporations exercising any of the foregoing privileges must pay the tax as set forth in this act for the exercising of said privilege, whether they make a business of it or not, unless otherwise provided; and this act shall not be so construed as to exempt any person, firm, or corporation whatever exercising any of the foregoing privileges from the payment of the tax herein prescribed for the exercise of

said privileges as herein provided, and except as provided in chapter 121 of the Acts of 1869 and 1870, excepting State and county fairs and their tenants."

"Sec. 16.  Be it further enacted, That it is hereby declared a misdemeanor for exercising any of the foregoing privileges without first paying the taxes prescribed for the exercise of the same, and all parties so offending shall be liable to a fine of not less than $10 nor more than $50 for each day such privilege is exercised without license; but this inhibition shall not apply to any person, firm, or corporation engaged in interstate commerce."

It is perceived that under section 4, the procuring of a United States revenue license as a wholesale or retail liquor dealer must be taken as *prima facie* evidence that the person so procuring is engaged in the wholesale or retail liquor business.

Under chapter 384, Acts of 1909, it is provided that "in all prosecutions for violations of the laws of this State prohibiting the sale of intoxicating liquors, copies of the records in the office of the internal revenue collector of the United States for the district of Tennessee, showing that the defendant has paid the internal revenue special tax as a liquor dealer, or showing the issuance to the defendant of an internal revenue special tax stamp, shall be admitted as competent evidence, when such copies are certified to be full, true and complete by the district internal revenue collector."

In the case of *Foster* v. *Speed,* 120 Tenn., 470, 111 S. W., 925, 22 L. R. A. (N. S.), 949, it was held that a

prohibited business may be taxed; that the fact that a business is made unlawful as a misdemeanor, and a license cannot be issued or obtained authorizing it, does not prevent the collection of the privilege tax imposed upon such business from a person engaged therein; that a statute making the retailing of liquors a privilege and imposing a tax thereon applies to sales made in places where the business is prohibited and made a misdemeanor; that the tax statute and the statute prohibiting sales in a given territory are consistent and tend to effect the same purpose—that is, the prevention of the sale of intoxicating liquors therein. The court said: "The imposition of a tax upon an outlawed business is often more efficient in suppressing it than statutes making it a criminal offense." Again: "The question here involved has been before this court in two or more unreported cases, and in all of them it has been held that the tax could be collected. The decisions of all other courts upon the question, that have been called to our attention, are to the same effect. In the case of *Youngblood* v. *Sexton*, 32 Mich., 406, 20 Am. Rep., 654, it is said: 'If one puts the government to special inconvenience and costs by keeping up a prohibited business or maintaining a nuisance, the fact is a reason for discriminating in taxation against him; and if the tax be imposed on the thing which is prohibited, or which constitutes the nuisance, the tax law, instead of being inconsistent with the law declaring the illegality, is in entire harmony with its whole purpose, and may sometimes be even more effectual.'

. . . The courts of last resort in a number of states have held that the fact that a business was prohibited, and license- could not be obtained authorizing it, was no defense to an action to collect the tax imposed from one engaged in such business"—citing authorities.

In *Carpenter* v. *State*, 120 Tenn., 586, 113 S. W. 1042, it is held that the business of retailing liquors in any part of the State, whether it be where they can be lawfully sold or where the sale is prohibited by law, is made a privilege by statute and taxed, and any one engaged in this business, although in violation of a prohibiting statute, is liable for this tax.

It follows that the prosecution in the present case may be sustained under section 16, supra, of chapter 479, of the Acts of 1909, although it does not appear there is any place in Scott county, or even this State, where intoxicating liquors may be lawfully sold. It also follows, that the portions of chapter 479 quoted, in so far as they apply to the liquor traffic, were intended as parts of a system for prohibiting and suppressing it, and that the use of the copy of the record of the internal revenue collector in a prosecution under these sections is its use in a prosecution for the "violation of the laws of this State prohibiting the sale of intoxicating liquors," and therefore that the evidence indicated in chapter 384, supra, may be made available thereon.

While it is necessary under chapter 161, Acts of 1899, to prove a sale to some particular person, no such necessity exists under chapter 479, sec. 16, of the Acts of

1909, since the offense thereunder is exercising the business of retailing or wholesaling intoxicating liquors without first paying the taxes prescribed, and the fact of the maintenance of such a business may be proven by the possession of the internal revenue license. This was held in *Austin* v. *Shelton*, 122 Tenn., 634, 638, 645, 127 S. W., 446, to be *prima facie* evidence in an action concerning the liability of a party for the tax imposed upon liquor dealers under section 4 of chapter 479, supra, of the Acts of 1909.

In the case of *Hermitage Club* v. *Shelton*, 104 Tenn., 101, 56 S. W., 838, it appeared that the Hermitage Club had taken out a United States revenue license as a retail liquor dealer. Under the revenue act in existence at that time, containing terms similar to section 4, c. 479, of the Acts of 1909, it was held *prima facie* the club was carrying on the business of a retail liquor dealer, and that the duty lay upon it of rebutting the presumption which arose from the possession of the federal license. This case was referred to and approved and distinguished in the case of *Moriarty* v. *State*, 122 Tenn., 440, 449, 450, 124 S. W., 1016.

By statute in several States the possession of an internal revenue license is made *prima facie* evidence that the accused party is engaged in the sale of intoxicating liquors, and these statutes have been upheld and applied by the courts of those States: *Winton* v. *State*, 77 Ark., 143, 91 S. W., 7; *Hestand* v. *State*, 28 Ky. Law Rep., 1315, 92 S. W., 12; *State* v. *O'Connell*, 82 Me., 30, 19 Atl., 86; *State* v. *Monberg*, 14 N. D., 291, 103 N. W., 566.

Diamond v. State.

In volume 17 Am. and Eng. Ency. of Law, under the title of "Intoxicating Liquors," and subtitle of "Statutes Prescribing Rules of Evidence," it is said:

"In a number of jurisdictions there are statutes which formulate certain rules of evidence applicable in prosecutions for violations of the liquor laws. The constitutionality of these statutes has been frequently assailed, but for the most part they have been held a valid exercise of legislative power. The following statutes have been held not unconstitutional: A statute providing that unexplained possession of liquors found under circumstances indicating an intent to sell unlawfully shall authorize a condemnation thereof (*Santo* v. *State*, 2 Iowa, 165, 63 Am. Dec., 487; *Lincoln* v. *Smith*, 27 Vt., 328); a statute providing that the prosecution need not, in the first instance, prove that the defendant has not a permit from the State (*Mugler* v. *Kansas*, 123 U. S., 623 [8 Sup. Ct., 273, 31 L. Ed., 205]); a statute making the presence of people in a saloon on days when sales are forbidden *prima facie* evidence of violating the law in selling liquor on those days (*State* v. *Gerhardt*, 145 Ind., 439 [44 N. E., 469, 33 L. R. A., 313]); a statute providing that delivery of intoxicating liquors in or from any building or place other than a dwelling house shall be deemed *prima facie* evidence of a sale and be punishable as such sale (*Com.* v. *Wallace*, 7 Gray. [Mass.], 222; *Com.* v. *Rowe*, 14 Gray [Mass.], 47; *Com.* v. *Williams*, 6 Gray [Mass.], 1); a statute providing that three several sales shall be sufficient evidence of a violation of the statute making it a punish-

able offense to be a common seller (*Com.* v. *Burns,* 9 Gray [Mass.], 132) ; a statute providing that evidence of the sale or keeping of intoxicating liquors for sale in any building, place, or tenement shall be *prima facie* evidence that the sale or keeping is illegal (*State* v. *Higgins,* 13 R. I., 330 [43 Am. Rep., 26, note]) ; a statute making proof of a delivery of intoxicating liquor sufficient evidence of a sale when an illegal sale is charged (*State* v. *Hurley,* 54 Me., 562; *State* v. *Day,* 37 Me., 244) ; a statute providing that, when it is proved that a physician gave a prescription to another person for intoxicating liquor, the burden is upon the physician to show that the liquor was needed as a medicine by the person for whom it was prescribed (*Com.* v. *Minor,* 88 Ky., 422 [11 S. W., 472]) ; and a statute providing that it shall not be necessary to prove an actual sale of intoxicating liquors in any building, place, or tenement, in order to establish the character of such premises as a common nuisance, but that the notorious character of any such premises shall be evidence that such premises are a nuisance (*State* v. *Wilson,* 15 R. I., 180 [1 Atl., 415] ; *State* v. *Waldron,* 16 R. I., 191 [14 Atl., 847]). There is no constitutional objection to the passage of a law that the presumption of innocence may be overcome by a contrary presumption founded upon the experience of human conduct, and enacting what evidence shall be sufficient to overcome such presumption of innocence. *Lincoln* v. *Smith,* 27 Vt., 328."

In the case last cited and in *Com.* v. *Williams,* 6 Gray (Mass.), 1, and *Com.* v. *Minor,* 88 Ky., 422, 11 S. W.,

472, instructive discussions of the general subject may be found. See, also, the discriminating observations of Prof. Wigmore, in 2 Wigmore on Ev., subsec. 3 of section 1354.

In the case of *State* v. *Yardley,* 95 Tenn., 546-564, 32 S. W., 481, 34 L. R. A., 656, this court upheld a statute (Acts 1895, c. 67) which involved the same question. The statute there under consideration was "An act to protect hotel, inn and boarding house keepers." It provided "that persons who shall, at any hotel, inn or boarding house, order and receive, or cause to be furnished, any food or accommodation, with intent to defraud the owner or proprietor of such hotel, inn or boarding house, out of the value or price of such food or accommodation," etc., should be held guilty of a misdemeanor. Section 2 of the act was as follows: "That proof that lodging, food or other accommodation was obtained by false pretense or by false or fictitious show or pretense of baggage, or that the party refused to pay for such food, lodging or accommodation on demand, or that he absconded without paying, or offering to pay, for such food, lodging or other accommodations, or that he surreptitiously removed, or attempted to remove, his or her baggage, shall be *prima facie* proof of the fraudulent intent mentioned in section 1 of this act." In discussing the point the court said that the section just referred to did not impair the right of trial by an impartial jury, as guaranteed by sections 6, 8, and 9, article 1, of the constitution, by providing that proof of certain things therein mentioned should be *prima facie*

evidence of fraudulent intent; that in every case the defendant would be entitled to trial by an impartial jury, and to the benefit of a presumption of innocence, but that that right and that presumption could no more preclude a presumption of guilty intent from sufficient evidence adduced than they could dispense with the introduction of evidence altogether. It was instanced that the courts had long held that juries might and should be instructed that proof of recent possession of stolen property unexplained would afford *prima facie* or presumptive evidence of guilt; that, upon a charge of murder, proof of the killing without more, would raise the presumption of malice. It is noted that in the case of *Railroads* v. *Crider,* 91 Tenn., 498, 499, 19 S. W., 618, this court sustained as constitutional a provision (under Acts 1891, c. 101, sec. 4) that the report of appraisers, as to the value of live stock killed, and as to amount of damage to live stock injured by a moving train upon an unfenced track, should be *prima facie* evidence of such value or damage in the event of suit brought therefor.

A statute making the possession of an internal revenue license or other fact indicated by the legislature *prima facie* evidence of the carrying on of a prohibited business does not make it obligatory upon the jury to convict after the presentation of such evidence, but shifts upon the accused the duty to explain. The rule is that statutes which undertake to make evidence of certain facts absolute or conclusive proof of guilt are unconstitutional. Those, however, which merely declare statutory presumptions affecting the burden of proof

Diamond v. State.

are valid. 2 Wigmore, Evidence, sec. 1354; Black, Intoxicating Liquors, secs. 60, 525; Cooley, Constitutional Limitations, pp. 409, 410.

What has been said covers the substance of all the errors assigned except one. This presents the point that the circuit judge committed error in rendering judgment, without the intervention of a jury, on a plea in abatement filed as to certain matters that transpired before the grand' jury when the presentment was found. The minutes of the court, as sent up, show no action by the trial judge upon the plea in abatement, and this matter need not be further considered. We cannot look to recitals in the bill of exceptions upon this subject.

There is no error in the judgment of the court below in any of the matters referred to. However, the punishment inflicted was different from that prescribed by the statute. Section 16 of chapter 479 of the Acts of 1909 fixes the minimum at $10, and the maximum at $50. The error can, however, be corrected here so as to conform to the statute. *Pressly* v. *State,* 114 Tenn., 534, 86 S. W., 378, 69 L. R. A., 291, 108 Am. St. Rep., 921; *Cronan* v. *State,* 113 Tenn., 539, 82 S. W., 477. The correction will be made so as to strike out the imprisonment and reduce the fine from $100 to $50.

With this modification, the judgment is affirmed.