JOHN HENRY BONDS, Plaintiff-in-Error,

*v.*

STATE OF TENNESSEE, Defendant-in-Error.

421 S.W.2d 87.

(*Nashville,* December Term, 1966.)

Opinion filed November 15, 1967.

556

Avon N. Williams, Jr., Nashville, for plaintiff in error.

George. F. McCanless, Attorney General, and Robert H. Roberts, Assistant Attorney General, Nashville, for defendant in error.

Mr. Justice Chattin delivered the opinion of the Court.

Plaintiff-in-error, a Negro, hereinafter referred to as the defendant, was indicted, tried and convicted in Williamson County for the offense of "feloniously and maliciously, by written communication, did threaten to kill one Mary Short with intent to compel the said Mary Short to do an act against her will, to-wit: to meet him, the said John Henry Bonds, and participate with him in an unnatural sex act; against the peace and dignity of the State."

Defendant's motion for a new trial was overruled and he has perfected an appeal to this Court and assigned errors.

The indictment was returned on Thursday, September 8, 1966. On Monday, September 12, 1966, defendant filed a motion to quash the indictment on the ground the indictment was too vague and indefinite to apprise the defendant of the nature of the accusation.

The motion was heard on Thursday, September 15, 1966, at which time the trial judge overruled the motion and set the case for trial on September 29, 1966.

On the same day, September 15, 1966, defendant filed a plea in abatement to the indictment. This plea challenged the constitutionality of the grand jury which returned the indictment on the ground the number of Negroes were deliberately limited proportionately for jury service; and that the membership of the grand jury which indicted defendant included and was deliberately limited to one Negro.

The plea further alleged Negroes had been excluded from service on all grand juries in Williamson County prior to 1965, and since that time there had only been one Negro on any jury in the county at any time in violation of the equal protection and due process clauses of the Federal Constitution.

The State filed a motion to strike the plea on the ground it was not filed at the first opportunity and therefore came too late. The State also filed a replication to the plea denying the grand jury had been deliberately limited to one Negro member.

On the day of the trial, September 29, 1966, the trial judge announced he would hear proof on the plea in abatement. He stated he would not rule on the motion to strike the plea until after hearing evidence in support of the plea.

Defendant offered the testimony of two jury commissioners, a retired circuit court clerk, and the sheriff.

The undisputed testimony shows the jury commissioners selected a proportionate number of names from the voters registration books of each district of the county. The list was compiled in August, 1965, for use during the ensuing two years in accordance with T.C.A. Section 22-228. Twenty-five hundred names were selected and placed on the jury list, the percentage from each district being determined by the relative size of the districts.

. In the process of compiling the jury list an effort was made to include the names of qualified Negroes from the various districts, resulting in approximately five per cent of the twenty-five hundred names being those of Negroes.

Each name selected from the registration books was placed on a white card of a uniform size. As a name was identified as that of a Negro or colored person, the card was marked with a small letter "C," each of the twenty-five hundred cards placed in the jury box contained a clear indication the name thereon was a white or a colored person.

T.C.A. Section 22-228 requires the cards upon which the names of jurors are written be locked in the jury box until the judge requests the jury commissioners to draw a jury panel therefrom.

Several days prior to the September, 1966, term of court, the circuit judge requested a jury panel of one hundred fifty names.

Subsequently, one hundred fifty names were drawn from the jury box by a young girl under the age of ten years.

The two jury commissioners testified, however, the first one hundred fifty cards drawn from the jury box did not contain the names of a sufficient amount of Negroes. That, for this reason, some of the cards were returned to the jury box and other cards were drawn until twenty-five of the one hundred fifty cards contained the names of Negroes.

Neither of the jury commissioners testified as to why the commission purposely withdrew from the jury box twenty-five names of Negroes and placed them on the jury panel. Their testimony, however, indicates they did not know the percentage of Negroes included in the total population of Williamson County nor did they attempt to find out.

Although the trial judge sustained the objections to the admission of evidence concerning prior grand and petit juries, he allowed for the record the testimony of several witnesses to the effect no Negro had served on the grand or petit juries of the county prior to 1965. Since that time there have been Negroes on the grand and petit juries. No witness, however, remembered more than one Negro ever being on any jury at a time.

At the conclusion of the evidence on the plea in abatement, the trial judge granted the motion to strike the plea and sustain the replication thereto. He, therefore, overruled the plea in abatement.

The trial then proceeded to verdict and judgment. The defendant was sentenced to not less than two nor more than five years in the State Penitentiary.

In his assignments of error, defendant does not question the sufficiency of the evidence.

Although defendant has filed four assignments of error, from the view we take of the case, we deem it only

necessary to consider one of the assignments, as we think it is good and should be sustained.

This assignment challenges the action of the trial judge in overruling the plea in abatement.

The State earnestly insists the trial judge properly sustained the motion to strike the plea in abatement. The general rule is a plea in abatement challenging the constitution of a grand jury must be filed at the first opportunity. *Pennell v. State*, 122 Tenn. 622, 125 S.W. 445 (1909); *Chairs v. State*, 124 Tenn. 630, 139 S.W. 711 (1911); *Turner v. State*, 187 Tenn. 309, 213 S.W.2d 281 (1947).

In *Pennell v. State*, the defendant filed a plea in abatement to challenge the constitution of the grand jury two months after the return of the indictment and after defendant had filed a plea of not guilty.

In *Chairs v. State* defendant filed a motion to quash the indictment on the ground Negroes had been excluded from the grand jury. The Court held the constitution of the grand jury could only be attacked by a plea in abatement. By way of dictum, the Court said the motion, if treated as a plea in abatement, came too late; being filed nine days after the return of the indictment with no explanation for the delay.

In *Turner v. State*, the Court held a plea in abatement attacking a jury panel filed sixteen days after arraignment and an entry of a plea of guilty was properly stricken.

In the instant case, the record shows defendant was indicted on Thursday. The following Monday he filed a motion to quash which was heard on the following Thursday, at which time he filed his plea in abatement.

■ ■ Surely an Attorney should have a reasonable time to investigate the feasibility of filing a plea in abatement challenging the constitution of a grand jury. The plea in abatement was filed within one week after the return of the indictment. We think the plea was filed within a reasonable time after the return of the indictment. To hold otherwise, we think would constitute a denial of due process.

Moreover, evidently the trial judge did not think the plea came too late since he permitted defendant to introduce evidence on the plea, although he did sustain the motion to strike the plea as well as sustain the replication of the State.

Under the circumstances, we are of the opinion we must consider the assignment.

Under the undisputed facts introduced on the plea in abatement, we find the jury commissioners deliberately limited the representation of Negroes on the jury panel to a specific proportion in violation of the equal protection and due process clauses of the Federal Constitution, as applied to the States by the Fourteenth Amendment.

■ We base our conclusion on the fact the names of Negroes were identified by the commissioners by marking the cards with a letter "C" which were placed in the jury box. Such identification of the names of Negroes placed in the jury box resulted in the arbitrary selection of twenty-five Negroes by the commissioners. The marking of the jury cards with the letter "C" to indicate persons of the Negro race constituted a purposeful discrimination which is unlawful under the Federal Constitution.

In the case of *Avery v. State of Georgia,* 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244 (1963), it was held the use of separately colored tickets constituted prima facie evidence of discrimination and the burden was on the State to overcome such evidence.

In the Avery case, the names of white persons were printed on white tickets and the names of Negroes were printed on yellow tickets. All tickets were placed in a jury box and drawn out by a judge. The Supreme Court, in holding such proof constituted prima facie evidence of discrimination, said:

"Even if the white and yellow tickets were drawn from the jury box without discrimination, opportunity was available to resort to it at other stages in the selection process. And, in view of the case before us, where not a single Negro was selected to serve on a panel of sixty—though many were available—we think that petitioner has certainly established a prima facie case of discrimination."

In *Williams v. State of Georgia,* 349 U.S. 375, 75 S.Ct. 814, 99 L.Ed. 1161 (1955); the Supreme Court, in applying the Avery case, said:

"We need only add that it was a system of selection and the resulting danger of abuse which was struck down in Avery and not an actual showing of discrimination on the basis of comparative numbers of Negroes and whites on the jury lists."

In *Whitus v. State of Georgia,* 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967), names of jurors were listed from tax rolls. The names of white persons were written on white paper and the names of Negroes on yellow paper. The court held under this system the opportunity

for discrimination was present and the commissioner's testimony no one was included or rejected on the jury list because of race or color was insufficient to overcome the prima facie case. To the same effect see *Arnold v. North Carolina,* 376 U.S. 773, 84 S.Ct. 1032, 12 L.Ed.2d 77 (1964).

In the case at bar the opportunity for discrimination was present because the cards bearing the names of Negroes were marked with the letter "C." Under the foregoing opinions of the United States Supreme Court such evidence constitutes a prima facie case of purposeful discrimination.

■ There is positive evidence of discrimination, however, in the case at bar. Commissioners drew names from the jury box until the number of Negroes equaled twenty-five and included them in the jury panel. Thus, the names of twenty-five Negroes were systematically included on the panel by this method.

In the case of *Cassell v. State of Texas,* 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839 (1950), the Court said.

"Proportional racial limitation is therefore forbidden. An accused is entitled to have charges against him considered by a jury in the selection of which there has been neither inclusion or exclusion because of race."

Accordingly, it is sufficient to show the method of selecting the jury panel discrimination between the races was possible and was practiced. Whether one or more Negroes were actually on the grand jury which indicted the defendant is not material.

We reaffirm what was said by this Court in the case of *State ex rel. Smith v. Johnson,* 220 Tenn. 49, 413

S.W.2d 694 (1967), in an opinion by Mr. Special Justice Harbison, as follows:

"We further recognize the rule that: '(A) defendant in a criminal case is not constitutionally entitled to demand a proportionate number of his race on the jury which tries him nor on the venire or jury roll from which petit jurors are drawn. * * * Neither the jury roll nor the venire need be a perfect mirror of the community or accurately reflect the proportionate strength of every identifiable group. *Swain v. State of Alabama,* 380 U.S. 202, 208, 85 S.Ct. 824, 829, 13 L.Ed.2d 759 (1965).'

"This Court has applied for many years the principle laid down by the United States Supreme Court in connection with the systematic exclusion of persons from the grand juries by reason of race. See *McKinnie v. State,* 214 Tenn. 195, 379 S.W.2d 214 (1964); *Kennedy v. State,* 186 Tenn. 310, 210 S.W.2d 132 (1947).

"The question of whether there has or has not been shown a systematic exclusion of racial groups as to violate the rights of an accused is, necessarily, largely one of fact in each case. *Patton v. State of Mississippi,* 332 U.S. 463, 68 S.Ct. 184, 92 L.Ed. 76 (1947)."

The judgment of the trial court is reversed and the indictment dismissed as void.

BURNETT, CHIEF JUSTICE, and DYER, CRESON and HUMPHREYS, JUSTICES, concur.