Donald R. RUSSELL and David Ford Sweeney, Plaintiffs in Error,

v.

STATE of Tennessee, Defendant in Error.

Court of Criminal Appeals of Tennessee.

Jan. 23, 1973.

Certiorari Denied by Supreme Court May 7, 1973.

James D. Petersen, Franklin, and William B. Bradley, Brentwood, for plaintiffs in error.

David M. Pack, Atty. Gen., Charles W. Cherry, Asst. Atty. Gen., Nashville, J. Alonzo Bates, Dist. Atty. Gen., Centerville, for defendant in error.

## OPINION

OLIVER, Judge.

Represented by appointed counsel, Russell and Sweeney were tried simultaneously and convicted upon four separate presentments, one charging Russell with escape from jail while confined on a felony charge, one charging Sweeney with escape from jail under like circumstances, one charging them jointly with the armed robbery of Charles Pope, and the other charging them jointly with taking and using Pope's pick-up truck temporarily without his consent in violation of the joy-riding statute (TCA § 59–504). Each of the defendants was sentenced to imprisonment in the penitentiary for one year in the joy-riding case and to ten years in the armed robbery case, and the court ordered those sentences to be served concurrently. Each was sentenced to not less than one nor more than three years in the penitentiary for escape from jail, and it was ordered that those sentences be served consecutively to their armed robbery sentences. An appeal in the nature of a writ of error to this Court was perfected in each case.

Although neither defendant has here challenged the sufficiency of the evidence to warrant and sustain their convictions, a brief resume of the material evidence is appropriate in the interest of clarity. It was stipulated and also established in the proof that the defendants were confined in the Williamson County Jail awaiting trial on felony presentments. In the early morning hours of May 24, 1971, very apparently with the help and connivance of a trusty named Buford who entered pleas of guilty to charges growing out of this incident, the defendants got out of their jail cell and exchanged their prison garb for their civilian clothing which was kept in the storeroom. Entering the office where night jailor Pope was reading a book while seated with his back to the door, Sweeney put a knife against his throat and they told him not to move and to do as he was told. Russell took Pope's .38 Smith & Wesson revolver out of the desk drawer, they then had him to stand and took his keys and billfold out of his pocket, took $60 and threw the empty billfold on the floor, locked him up in the padded cell of the jail, and then they and trusty Buford fled

in Pope's pick-up truck which was parked outside. Other trusties unlocked the cell and released Mr. Pope and reported the escape. City police officers apprehended the defendants and Buford in Mr. Pope's truck shortly thereafter and recovered his revolver and money. Neither of the defendants testified or presented any evidence.

In their first Assignment of Error the defendants insist, as they did in their motion for a new trial, that the trial court erred in permitting the sheriff to re-enter and remain in the courtroom after he and the other witnesses had been excluded when the rule for the sequestration of witnesses was demanded. For some reason, during the testimony of Mr. Pope, the court interrupted the proceedings and said: "Gentlemen, just a moment, I think I have the discretion about it and I'm going to ask the Sheriff to be in here as Sheriff." Russell's counsel noted an objection when the sheriff re-entered the courtroom.

 This insistence is untenable. The sheriff was not present when the escape and robbery of Mr. Pope occurred, and there is nothing in his testimony to indicate that he was influenced in the least by what Mr. Pope and the other witnesses testified in his presence. Beyond that, the law is settled in this State that the exclusion of witnesses from the courtroom is not a matter of right, but rests in the sound discretion of the trial judge and that his action will not be reversed in the absence of a showing he abused his discretion to the prejudice of the complaining party. Nance v. State, 210 Tenn. 328, 358 S.W.2d 327; State ex rel. Phillips v. Henderson, 220 Tenn. 701, 423 S.W.2d 489; Rucker v. Tollett, Tenn.Cr.App., 475 S.W.2d 207. In *Nance,* supra, the Court said:

"Since probably the beginning of time in the trial of cases witnesses have been sequestered by order of the court on motion of counsel on either side. Our earliest reported case on the subject is Nelson v. State, 32 Tenn. 237. Obviously this rule, or expedient, is designed to detect falsehood as well as to prevent any witness from coloring his, or her, testimony either purposely or through influence by talking to other witnesses and hearing them talk. An interesting discussion and summary of the question under consideration may be found in Wharton's Criminal Evidence, 12th Ed., Anderson, Vol. 3, sec. 840, page 260, et seq. At page 209 of this work, it is said:

'The violation of the order of sequestration does not in itself make the witness incompetent or compel his exclusion', citing authorities from many states.

\* \* \* \* \* \*

"It is the settled law of this State that the matter of placing witnesses under, or exempting them from, the rule is within the discretion of the trial judge, and that his action will not be reversed unless it is made to appear that the court abused his discretion, and that such abuse worked to the prejudice of the complaining party. Pennington v. State, 136 Tenn. 533, 190 S.W. 546, and authorities therein cited."

Here the sheriff's testimony added nothing of controlling significance. He testified that one of the trusties called him at home and another called the police to report the incident; that he went to the jail and verified the escape; that he went to the scene where the police had apprehended the defendants and drove Mr. Pope's truck back to the jail and returned the defendants to their cells; and that the escape was accomplished by the assistance of a trusty. As in Phipps v. State, Tenn.Cr. App., 474 S.W.2d 154, wherein the sheriff's testimony was only cumulative, in the cases now before us we think it is unquestionable that the sheriff's testimony was in no way crucial or determinative of the results, and that the trial judge did not abuse his discretion.

In the next and final Assignment Sweeney contends that the trial court erred in

overruling his plea in abatement to the indictment on the ground of misnomer. No plea in abatement was filed. Instead, the following excerpt from the Bill of Exceptions reflects the entire conversation between Sweeney's counsel and the court about this matter at the beginning of the trial:

"MR. PETERSEN: Your Honor, could we be allowed, this is a Court appointed case and we hate to wait until the last minute but unfortunately these men have been in the penitentiary for some time and we haven't had an opportunity to speak with the defendants and my defendant is misnamed in the indictment and I would like to have the opportunity to have a Plea in Abatement for a misnomer typed up and entered into the record.

THE COURT: Well I would have to know whether did or not, I wouldn't know him if I saw him.

MR. PETERSEN: I understand.

THE COURT: These were indicted at the present Term of Court, were they not.

DIST. ATTY. GEN. BATES: Yes, sir.

MR. PETERSEN: Yes, sir.

THE COURT: You might state your facts then, Mr. Petersen and see.

MR. PETERSEN: Your Honor please, my Plea in Abatement reads: Comes now the defendant, William David Sweeney, for Plea in abatement would state:

That his full name is William David Sweeney and that he is not named as the person indicted is named and that the indictments as against him, William David Sweeney, is improper, the indictments read David Ford Sweeney, and that is not the defendant's name, Your Honor, please.

THE COURT: Well write it just that way and I'll overrule it. That is the wording as you stated it.

MR. PETERSEN: Yes, sir.

THE COURT: All right."

■ Obviously, no plea in abatement having been filed, no such plea ever came into existence in this case and the trial court was in error in purporting to rule upon a non-existent pleading. In Gray v. State, 194 Tenn. 234, 250 S.W.2d 86, the action of the trial judge in overruling a plea in abatement was assigned as error. The Court said:

"The assignment must be overruled for the following reasons: (1) there is no entry upon the minutes of the court showing the action of the trial judge upon said plea, and (2) we cannot look to the bill of exceptions to determine the question. We are not left in doubt as to this assignment. In Diamond v. State, 123 Tenn. 348, 363, 131 S.W. 666, 669, it was held:

'The minutes of the court as sent up, show no action by the trial judge upon the plea in abatement, and this matter need not be further considered. We cannot look to recitals in the bill of exceptions upon this subject.' "

See also: Jones v. State, 197 Tenn. 667, 277 S.W.2d 371.

Upon the same principle and by parity of reasoning it must be obvious that we can no more look to the Bill of Exceptions to determine the content and sufficiency of a proposed plea in abatement than we can to ascertain the action of the trial judge upon such a plea. The rigid requisites of a plea in abatement are common knowledge in the legal community. There can be no such thing as an oral plea in abatement. This concludes the matter as far as our review of it is concerned. With the record before us in this posture, obviously we are unable to review or pass upon the question raised orally before the court by Sweeney's attorney.

■ Moreover, quite apart from the foregoing considerations, surely every law-

yer knows that in order to sustain a plea in abatement properly prepared and filed, the truth of its factual averments must be satisfactorily established either by competent proof or by stipulation. In the record before us there is neither proof nor stipulation concerning Sweeney's proper Christian name.

It results that both Assignments of Error must be overruled.

Upon our own initiative we have considered whether the conviction of the defendants for armed robbery, for taking the jailor's truck without his consent in violation of the joy-riding statute, and for felonious escape from jail, and the imposition of separate sentences for each offense as related at the outset, violated the rule proscribing the splitting of an offense into separate offenses so as to pyramid punishment.

■ The courts of this State have repeatedly considered similar contentions, and have promulgated the general principle that conviction for one crime does not bar a conviction for another committed during the same transaction if the crimes are distinct and separate. Thus, in State v. Ross, 72 Tenn. 442, the Court affirmed convictions for disturbing a religious assembly and for assault with intent to commit murder. In Grindstaff v. State, 172 Tenn. 77, 110 S.W.2d 309, and in Arterburn v. State, 216 Tenn. 240, 391 S.W.2d 648, the Court held that conviction for involuntary manslaughter was no bar to conviction for carrying the pistol used in the killing. In Harris v. State, 206 Tenn. 276, 332 S.W.2d 675, conviction of burglary was held not to bar conviction of simultaneous assault with intent to commit rape. The Court held in Smith v. State, 159 Tenn. 674, 21 S.W.2d 400, that the defendant was properly convicted of manslaughter by driving a vehicle in a reckless manner and also for driving while drunk at the same time, because the latter offense is not a necessary ingredient of the former, the offenses are unrelated, and the commission of the latter was complete before the fatal accident. In State v.

Parker, 81 Tenn. 225, affirming a conviction for unlawfully carrying a pistol, the Court held that offense "was complete before he did the shooting with it, for which he has been convicted in that case [assault with intent to commit murder] . . . he might be properly convicted for the previous carrying before he was discovered and confronted by the officer whom he shot." And in Rockett v. State, Tenn.Cr. App., 475 S.W.2d 561 this Court affirmed convictions for concurrent rape and robbery of the victim.

■ Clearly distinguishable factually from the foregoing cases are those in which it has been held that dual convictions arising out of the same transaction are impermissible if the same criminal intent is involved in both. Patmore v. State, 152 Tenn. 281, 277 S.W. 892 (possessing a still and manufacturing whiskey, the Court noting that evidence of manufacturing would be proof of possessing the still); Dowdy v. State, 158 Tenn. 364, 13 S.W.2d 794 (public drunkenness and driving while drunk); Wilcox v. State, 74 Tenn. 571 (robbery and assault with intent to commit murder, the Court reasoning that the assault was a common and essential element in both offenses); Jackson v. State, 216 Tenn. 13, 390 S.W.2d 202 (possessing and selling the same liquor); Carter v. State, 1 Tenn.Cr.App. 545, 447 S.W.2d 115 and McAfee v. State, 3 Tenn.Cr.App. 424, 463 S.W.2d 141 (burglary and larceny at same time and place); Walton v. State, 1 Tenn. Cr.App. 668, 448 S.W.2d 690 (burglary with intent to have carnal knowledge and assault and battery with intent to rape); Acres v. State, Tenn., 484 S.W.2d 534 (murder conviction for killing during robbery bars robbery prosecution).

The pertinent guidelines formulated and generally followed by the courts have been well summarized by text writers. In 21 Am.Jur.2d., Criminal Law § 182, pp. 239–240, it is said:

"One test of identity of offenses is whether the same evidence is required to

prove them. If the same evidence is not required, then the fact that both charges relate to, and grow out of, one transaction, does not make a single offense where two are defined by the statutes.

"If there was one act, one intent, and one volition, and the defendant has been tried on a charge based on that act, intent, and volition, no subsequent charge can be based thereon, but there is no identity of offenses if on the trial of one offense proof of some fact is required that is not necessary to be proved in the trial of the other, although some of the same acts may necessarily be proved in the trial of each."

And in 22 C.J.S. Criminal Law § 9(1), pp. 25–27, it is said:

"The question whether a series of wrongful acts constitutes a single or multiple offense must in the last analysis be determined by the facts and circumstances of each individual case; doubt should be resolved against turning a single transaction into multiple offenses. Various tests are applied in determining whether statutes are intended to create one or more offenses. Whether a single transaction, act or series of acts constitutes two or more separate offenses is determined by whether each offense requires proof of facts or elements additional to, or other than, those involved in, or essential to, the other, or whether there are distinct elements in one offense which are not included in the other. Another general test of whether there are separate offenses or one offense is whether the evidence discloses one general intent or separate and distinct intents; this question is determined by the particular facts and circumstances of each case.

"Two or more crimes are the result of a single act or transaction when the commission of the act or the execution of the transaction brings each into existence. Separate and different acts of the same nature performed at different times generally constitute separate offenses. If the act involved in one charge is necessarily involved in the other and is merely incidental to that charge, one offense only is committed; but when one of two criminal acts committed successively is not a necessary ingredient of the other, there may be a conviction and sentence for both."

In our judgment the facts and circumstances disclosed in this record demonstrate conclusively that the three crimes committed by these defendants involved different criminal intents, consist of different elements, could not be proved by the same set of facts, and that they were, therefore, properly convicted and sentenced for each.

Affirmed.

GALBREATH, J., concurs with opinion.

O'BRIEN, J., dissents with opinion.

GALBREATH, Judge (concurring).

I concur in Judge Oliver's opinion with some reservations.

While it is clear that counsel for plaintiff in error Sweeney fully intended to file a plea in abatement pointing out that the indictment did not correctly state this defendant's name, it is equally clear that for some reason he did not file it. There is nothing in the technical record that indicates any such filing, and thus there is nothing for us to consider on the assignment as correctly pointed out by Judge Oliver citing our Supreme Court in Gray v. State, 194 Tenn. 234, 250 S.W.2d 86.

I am troubled by the implication that Sweeney has been deprived of what could well have been a valid and successful attack on the indictment through a failure on the part of a State agent, his court-appointed attorney, to file the plea in abatement and thus preserve his client's right to an appellate review. As our Supreme

Court has consistently held since Nelms v. State, 219 Tenn. 727, 413 S.W.2d 378, in cases "in which it affirmatively appears that an indigent defendant has been deprived of an appellate review of his case on the merits by reason of delay or non-action on the part of state agencies . . . we have no alternative but to reverse . . . and remand it for a new trial, in order that a proper record may be made and in order that the accused may be afforded an effective appellate review if desired."

*Nelms,* and the later cases (particularly the unreported opinion in James v. Jamison et al v. State, released May 8, 1969), dealt with the failure or non-action of court-appointed attorneys for indigents relating to the preparation and filing of bills of exceptions. While it may be that the failure noted here was just as damaging to the indigent defendant whose right to a full appeal was seemingly thwarted by the failure of his counsel to file the plea in abatement apparently prepared as read into the bill of exceptions, I do not believe this Court at this time should undertake to extend the holdings in the Nelms type cases to cover oversights in making up and preserving the technical record. It could be that the plea was filed but through oversight was left out of the technical record. If so, it could be, or could have been, supplied by a motion suggesting diminution of the record.

My reluctance to urge voidance of the conviction of Sweeney in order that his case could be remanded for a proper filing and disposition on the aborted plea in abatement is probably colored by my tentative view that an indictment naming David Sweeney as a defendant could well be valid even though the other surname of the defendant is incorrectly stated. There remains no doubt in my mind from reading the record that the David Sweeney accused in this case was the person who escaped from jail along with the co-defendant Donald R. Russell and that he was fairly and justly convicted. I would hold any error involved to be harmless.

O'BRIEN, Judge (dissenting).

I respectfully dissent.

The second assignment of error in this case is raised by the defendant, Sweeney, individually, and charges error to the trial court in refusing to grant the plea in abatement offered on grounds of misnomer.

There is no plea in abatement filed in the technical record. The entire colloquy between court and counsel regarding the plea in abatement is contained in the bill of exceptions and is quoted verbatim since this is the primary basis for my dissent.

"MR. PETERSEN: Your Honor, could we be allowed, this is a Court appointed case and we hate to wait until the last minute but unfortunately these men have been in the penitentiary for some time and we haven't had an opportunity to speak with the defendants and my defendant is misnamed in the indictment and I would like to have the opportunity to have a Plea in Abatement for a misnomer typed up and entered into the record.

THE COURT: Well I would have to know whether did or not, I wouldn't know him if I saw him.

MR. PETERSEN: I understand.

THE COURT: These were indicted at the present Term of Court, were they not.

DIST. ATTY. GEN. BATES: Yes, sir.

MR. PETERSEN: Yes, sir.

THE COURT: You might state your facts then, Mr. Petersen and see.

MR. PETERSEN: Your Honor please, my Plea in Abatement reads:

Comes now the defendant, William David Sweeney, for Plea in Abatement would state:

That his full name is William David Sweeney and that he is not named as

the person indicted is named and that the indictments as against him, William David Sweeney, is improper, the indictments read David Ford Sweeney, and that is not the defendant's name, Your Honor, please.

THE COURT: Well write it just that way and I'll overrule it. That is the wording as you stated it.

MR. PETERSEN: Yes, sir.

THE COURT: All right."

In overruling this assignment, the majority rely on the authority of Gray v. State, 194 Tenn. 234, 250 S.W.2d 86, in which our Supreme Court said:

"It is next assigned as error the action of the trial judge in overruling and disallowing the defendant's plea in abatement to the indictment because (1) the names of grand jurors were illegally drawn from the jury box by the Jury Commission and for this reason the grand jury was unlawfully impaneled; (2) that the trial judge erred in directing members of the Jury Commission that they need not answer questions of counsel as to the manner of drawing the names of prospective jurors."

"The assignment must be overruled for the following reasons: (1) there is no entry upon the minutes of the court showing the action of the trial judge upon said plea, and (2) we cannot look to the bill of exceptions to determine the question. We are not left in doubt as to this assignment. In Diamond v. State, 123 Tenn. 348, 363, 131 S.W. 666, 669, it was held:

'The minutes of the court, as sent up, show no action by the trial judge upon the plea in abatement, and this matter need not be further considered. We cannot look to recitals in the bill of exceptions upon this subject.' "

I am of the opinion that the ruling in Gray v. State, supra, is not applicable to the facts of this case. In *Gray* the plea in abatement complained of illegal composition of the grand jury and a ruling of the trial court in directing members of the Jury Commission that they need not answer questions of counsel. . . . . . .
In the case, sub judice, the defendant, Sweeney, is misnamed in the indictments. This is not a case of "idem sonans" or "variant orthography", as discussed in Goodwin v. State, 148 Tenn. 682, 257 S.W. 79, but a clear *misnomer* of the defendant as proscribed by statute (T.C.A. 40–1803), and case law, (State v. Hughes, 31 Tenn. 261), in this State. The indictments in this case are fatally defective.

It is unquestionable, under the authority of *Gray*, supra, that we cannot look to the bill of exceptions to determine this question, and it is equally unquestionable that a plea in abatement must be filed at the first opportunity. Bonds v. State, 220 Tenn. 555, 421 S.W.2d 87. However, *Bonds*, also holds that an attorney should have a reasonable time to investigate the feasibility of filing a plea in abatement. It would appear from the limited evidence in this record that counsel was endeavoring to comply with the rule under the circumstances of this case and that the trial court was precipitous in directing the manner in which the plea should be written and in overruling it. In view of the rule in this State regarding the strict construction to be given to plea in abatements, Lewis v. State, 38 Tenn. 329; Smartt v. State, 112 Tenn. 539, 80 S.W. 586, under the facts of this case, counsel should have been given an opportunity to prepare and file a proper plea in abatement. The authority on *misnomer in an indictment is sparse in this* State. State v. Hughes, 31 Tenn. 261, appears to govern in a case of this nature. The error was fatal and should have been corrected by the trial court.

The indictments in this case were returned on September 10th, 1971. Counsel was appointed for defendant, Sweeney, on September 13th, 1971. The cases came to trial on September 27th, 1971. There is

nothing in the record to indicate when Sweeney was returned from the penitentiary to Williamson County for trial, beyond counsel's statement to the court that he had not had an opportunity to speak with the defendant. After counsel was appointed on September 13th, 1971, the trial court thereupon adjourned until September 27th, the date of the trial. While there is nothing in the technical record which indicates the plea in abatement was filed, the technical record does contain a motion for a speedy trial which was filed on June 28th, 1971, indicating this defendant's name to be William D. Sweeney. There is not any indication in this record that defendant was known by any other name except in the indictments.

While it is true that this defendant did not raise any question about the sufficiency of the evidence to sustain his conviction, and no testimony or evidence was presented to rebut the State's proof establishing his guilt, a valid conviction cannot rest on a void indictment. It seems apparent that State action was involved in the peremptory action of the trial court in ruling on the plea in abatement when it was presented by appointed counsel prior to any plea to the indictments.

There is some thought that our Supreme Court has departed from the rule laid down in State v. Hughes, supra, in Goodwin v. State, supra, but an examination of these opinions does not sustain that conclusion. The Supreme Court has cited Hughes with approval in Bolin v. State, 219 Tenn. 4, 405 S.W.2d 768 (1966), and in my view there has been no indication by that Court that *Hughes* has been overruled.

The bill of exceptions reflects that in Case No. 1337, the jury returned a verdict of guilty of escape with a sentence of three years against the defendant, Sweeney. This was confirmed by the trial court and judgment was entered for "an indeterminate period of not less than one nor more than three years". The technical record reflects that in the order overruling the motion for new trial, the trial judge stated the sentence fixed by the jury in Case No. 1337 against the defendant Sweeney, to be *one year* and fixed sentence for "an indeterminate period of *not less than one year nor more than one year*. In such a case of conflict between minutes of the Court and the bill of exceptions the recital in the bill of exceptions is controlling over the contrary minute entry. Phillips v. State, 1 Tenn.Cr.App. 352, 443 S.W.2d 515; Bailey v. State, Tenn.Cr.App., 479 S.W.2d 829. It is proper to note this discrepancy for the purpose of the record.

The convictions in this case were for escape, armed robbery, and taking an automobile without the owner's consent. In Acres v. State, 484 S.W.2d 534, in considering a similar question our Supreme Court had this to say:

"We come now to the question as to whether or not two convictions in this case, that of murder in the first degree and that of armed robbery can be allowed to stand. We think not."

"There is no doubt that these two offenses were committed at the same time and were parts of a single continuing act inspired by the same criminal intent essential to each offense, and were susceptible to but one punishment, and conviction of one is a bar to conviction of the other, Walton v. State, 1 Tenn.Cr.App. 668, 448 S.W.2d 690; Cronan v. State, 113 Tenn. 539, 82 S.W. 477; State v. Covington, 142 Tenn. 659, 222 S.W. 1; Patmore v. State, 152 Tenn. 281, 277 S.W. 892; Dowdy v. State, 158 Tenn. 364, 13 S.W.2d 794; English v. State, 219 Tenn. 568, 411 S.W.2d 702."

. . . . . .

"The defendant Acres was convicted under two separate indictments, that of murder in the first degree and that of armed robbery. The two offenses were parts of a single continuing act, and we are of the opinion that it was error for the court below to pronounce judgment for both crimes as charged in the indictments."

"When this Court finds that only one of the two judgments can stand, the judgment for the greater offense should be allowed to stand. This is the accepted rule."

In this case I would reverse as to the defendant, Sweeney, and remand for filing and consideration of the plea in abatement, and such other action necessary to a trial under a valid indictment.

As to the defendant, Russell, in Case No. 1334, wherein defendant was given a sentence of one to three years for escape; and Case No. 1366 where he was sentenced to one year for taking a motor vehicle without the owner's consent, I am of the opinion that the rule stated in *Acres,* supra, is controlling. Those judgments should be reversed and dismissed. The judgment in Case No. 1335, as to the defendant, Russell, and the sentence of ten years for . armed robbery should be affirmed.