### Willie Lee HENDERSON
### v.
### Lewis S. TOLLETT, Warden, Brushy Mountain State Prison.
### Civ. No. 5996.

United States District Court,
M. D. Tennesssee,
Nashville Division.
April 12, 1971.

Willie Lee Henderson, pro se.

David Pack, Atty. Gen., and R. Jackson Rose, Asst. Atty. Gen., State of Tennessee, Nashville, Tenn., for respondent.

## ORDER

FRANK GRAY, Jr., Chief Judge.

This proceeding involves a petition for the writ of habeas corpus. Petitioner is presently confined, in the custody of respondent, at the Brushy Mountain Prison, Petros, Tennessee, where he is serving a sentence of ninety-nine years which was imposed by the Criminal Court of Davidson County, Tennessee, following his plea of guilty, in 1948, to a charge of murder in the first degree. In his *pro se* petition, petitioner sets forth four grounds upon which he bases his claim that his present incarceration is illegal. With regard to the first three of his asserted grounds, petitioner makes no affirmative showing, nor does he otherwise indicate, that he has ever presented them for adjudication to the courts of Tennessee. Since a showing of exhaustion of available state remedies is required by 28 U.S.C. § 2254 before federal habeas corpus relief can issue, this court, by order entered December 29, 1970, refused to take cognizance of petitioner's first three grounds for relief. As his fourth ground for relief, petitioner asserts that his present confinement is illegal, because he was indicted by a grand jury from which members of his race (Negro) had been systematically excluded.

With regard to this fourth ground, the petition contains the required showing of exhaustion of available state remedies. Additionally, as was noted by this court in its order of December 29, 1970, this ground raises constitutional issues of considerable magnitude. Accordingly, the aforesaid order directed respondent to show cause why the writ should not issue. The directed response was subsequently forthcoming, and, no satisfactory cause to the contrary appearing therein, it was ordered that the writ issue and that petitioner be

brought before this court at an appointed time for a hearing. The hearing was held as ordered, and, as a result thereof, the following have been established as the basic facts of the case.

Petitioner, a black youth, was indicted by the Davidson County Grand Jury in 1948 on a charge of murder in the first degree. Although roughly one fourth of the population of Davidson County in 1948 was composed of members of petitioner's race, no black people served on the grand jury which indicted him; no black people had ever served on a Davidson County Grand Jury prior to the time of his indictment; and no black people served on the Davidson County Grand Jury until well into the next decade following his indictment. What is more, whenever the name of a black citizen appeared on the venire lists from which members of the Davidson County Grand Jury were chosen at the time of petitioner's indictment, it was marked with either the designation "c" or the designation "col" to signify that the bearer of the name was "colored." Petitioner was represented by counsel who failed to object to the composition of the indicting grand jury, quite simply, because the possibility never occurred to him. For the same reason, he never apprised petitioner of the possibility of attacking his indictment on that ground, and petitioner himself, a twenty-year-old with less than a sixth grade education, never thought of the possibility on his own. Ultimately, petitioner pleaded guilty (he now claims as the result of coercion and trickery, but that is irrelevant in the present context) and was sentenced to serve a term of ninety-nine years in prison.

After serving some two decades in prison, petitioner collaterally attacked his sentence in a state habeas corpus proceeding on the ground that he had been indicted by a racially-exclusive grand jury. His petition was denied at the trial level without a hearing. Eventually, however, the Supreme Court of Tennessee reversed this denial and ordered that an evidentiary hearing be held on petitioner's allegations. Apparently petitioner was provided with court-appointed counsel who, in effect, elected to begin the proceeding *de novo* by filing a second and somewhat more sophisticated petition, based upon the same ground, in the Criminal Court of Davidson County (No. 4662) on January 12, 1968. A hearing was held on the new petition, and at that hearing all of the facts recited above were adduced. Nevertheless, the trial judge found as a matter of fact that there had been no systematic exclusion of Negroes from the grand jury which had indicted petitioner, and, accordingly, the petition was denied.

Petitioner appealed, and a divided Court of Criminal Appeals of Tennessee, with apparent reluctance, affirmed the decision of the trial judge. The appellate court did not, however, affirm the trial judge's finding of fact that there had been no systematic exclusion of Negroes from the Davidson County Grand Jury in 1948. Rather, it based its decision on the ground that, regardless of whether petitioner was correct or not in contending that members of his race had been systematically excluded from the grand jury which had indicted him,[1] he had waived all right to complain of the grand jury's composition, (a) because he had failed to raise that issue by means of the procedural devices available to him at the time of his indictment and conviction, and (b) because his plea of guilty had abrogated any defects which the indictment might have contained. Henderson v. Russell, No. 5996 (Ct.Crim.App.Tenn., filed July 6, 1970). This decision by the Court of Criminal Appeals of Tennessee became the final state court ruling in the case upon denial of certiorari by the Supreme Court of Tennessee. Finally, having thus exhausted his available state remedies, pe-

---

1. The clear implication of the three opinions rendered in the case is that the members of the Court of Criminal Appeals of Tennessee felt that petitioner's contention was correct.

titioner sought federal habeas corpus relief. It remains, then, to consider whether such relief shall be granted.

(I) The constitutional issue: indictment of a black man by a grand jury from which members of his race have been systematically excluded.

■■ The unconstitutionality of racially-exclusive grand juries, insofar as their actions affect members of the excluded race, has been firmly established since at least as early as 1880. Strauder v. West Virginia, 100 U.S. 303, 25 L.Ed. 664 (1880). Neither an in-depth analysis of the facts of the instant case nor a lengthy citation of authorities is required to support the proposition that petitioner's showing of the total absence of members of his race from the Davidson County Grand Jury in 1948 and prior years constitutes proof of a *prima facie* case of systematic exclusion of such persons, thereby casting the burden on respondent to prove to the contrary. Whitus v. Georgia, 385 U.S. 545, 87 S. Ct. 643, 17 L.Ed.2d 599 (1967). This burden respondent clearly has failed to sustain. Moreover, any rebuttal proof which respondent might have offered would have been essentially ineffective in the face of petitioner's showing that the names of black people were given distinguishing marks whenever they appeared in the venire lists from which Davidson County Grand Jurors were chosen at the time of his indictment, for it is obvious that such ". . . marking of the jury . . . [lists] with the letter 'C' [or with the abbreviation 'col']. to indicate persons of the Negro race constituted a purposeful discrimination which is unlawful under the Federal Constitution." Bonds v. State, 220 Tenn. 555, 421 S.W.2d 87, 90 (1967). It is thus ineluctable that petitioner was indicted by an unconstitutionally-composed grand jury, and it is also ineluctable that such a body is legally not a grand jury at all.

(II) The waiver issue: effect of petitioner's failure to object, at the time of his indictment or shortly thereafter, to the racial composition of the grand jury which indicted him.

■ Respondent concedes—as it is apparent he must—that petitioner has proved everything necessary fully to support his contention that members of his race were systematically excluded from the grand jury which indicted him. He thus asserts ". . . that the only [remaining] issue is whether or not the petitioner has waived his rights to question the composition of the [indicting] grand jury . . .," and he strenuously insists that petitioner has indeed waived such rights. This court does not agree.

With all deference to what respondent refers to as a "long line of cases" in Tennessee which appear to hold otherwise, this court feels it is illogical to contend that either petitioner's failure timely to object to the composition of the indicting grand jury or his subsequent entry of a guilty plea constitutes a waiver, by operation of law, of his right to object to the composition of that grand jury at the present time. Such a contention, as pointed out by Judge Oliver in his well-reasoned and convincing dissent in Henderson v. Russell, *supra*, rests upon a confusion between an indictment which is merely technically defective and one—such as petitioner's—which is a complete nullity.[2] In the latter case, stated in the simplest of terms, there is no "defect" in the indictment to waive, for there is in fact no "indictment" to contain such a defect: instead, there is merely a sheet of paper, meeting, to be sure, the facial requisites of a valid indictment, but having in actuality no legal effect whatsoever. It is clear that any crimi-

---

2. Thus, for example, in the case of Bonds v. State, supra, an indictment rendered by a racially-exclusive grand jury in Williamson County was " . . . dismissed as void" by the Supreme Court of Tennessee

(and this despite the fact that, strictly speaking, defendant's challenge to the racial composition of the indicting grand jury was not timely raised).

nal prosecution brought incident to such an "indictment" is illegal and that a plea of guilty to such an "indictment" is of no binding effect, for such an "indictment" confers no subject-matter jurisdiction on the sentencing court. State v. Hughes, 212 Tenn. 644, 371 S.W.2d 445 (1963); Robinson v. City of Memphis, 197 Tenn. 598, 277 S.W.2d 341 (1955); and cases cited in Henderson v. Russell, *supra* (Oliver, J., dissenting).

Respondent places great store in the fact that a defendant in federal court may, under Rule 12(b) (2) of the Federal Rules of Criminal Procedure, waive the right to complain of the racial composition of the grand jury which indicted him if he fails to raise that issue at a specified stage in the proceeding. Indeed, the crux of his entire position with regard to waiver seems to be the proposition that if unconstitutionality of grand juries may be waived in federal court, then the same rule should apply to state court proceedings. His basic assumption is that, if petitioner had been indicted by a federal grand jury and sentenced by a federal judge, then he would now be precluded from objecting to the racial composition of the indicting grand jury. From this premise, respondent infers that the same result should be effected in the case at bar.

This court is not persuaded by respondent's argument and is of the opinion that it fails for at least three reasons: (1) his basic assumption is factually incorrect; (2) even if his basic assumption were true, a waiver under Rule 12 is not analogous, in terms of what is actually waived, to the waiver assertedly made by the instant petitioner; and (3) ignoring completely (1) and (2), *supra*, the case law is clear as to the test for waiver which this court must apply in the case at bar, and, applying that test, it is inescapable that petitioner has waived nothing. A brief amplification of the foregoing considerations is here in order.

(1) Rule 12(b) (2), Federal Rules of Criminal Procedure, provides that "[d]efenses and objections based on de-

fects in the institution of the prosecution or in the indictment . . ." must be raised before trial, otherwise they are waived. In his brief, respondent sets forth pertinent portions of the notes of Advisory Committee on Rules to point out that "[i]llegal selection or organization of the grand jury" is one of the defenses or objections thus subject to waiver, and he cites several federal cases which refuse, on grounds of waiver under Rule 12, to permit the challenge of indictment by racially-exclusive grand juries to be raised.

Nevertheless, respondent's brief omits an important consideration, namely, the fact that Rule 12(b) (2) expressly provides that the defense of lack of jurisdiction is not waived by failure to raise it before trial. It is indeed difficult, if not impossible, to conceive how the rule could provide otherwise, for it is axiomatic in Anglo-American jurisprudence that one cannot waive lack of jurisdiction, even if one so wishes. And, as noted above, a void indictment, under the law of Tennessee, confers no subject-matter jurisdiction on the sentencing court. Hence, Rule 12, by its very language, would not necessitate a finding of waiver in the case at bar, even if it were applicable herein.

Further, Rule 12(b) (2) also provides that, in the case of those defenses and objections which are waived if not raised before trial, ". . . the court for cause shown may grant relief from the waiver." Respondent has not apprised this court of any reason why a court before which an individual's conviction is attacked collaterally may not likewise grant relief from such waiver, upon a showing of good cause. In the instant case, any number of factors have been established which suffice to constitute such a showing. Thus, if petitioner were held, by operation of law, at some point to have waived his right to challenge the racial composition of the grand jury which indicted him, it is readily apparent that this court could appropriately grant relief from such waiver, even if Rule 12(b) (2) actually

applied to the case at bar. It is clear from the foregoing considerations that respondent's basic premise is incorrect.

(2) Assuming, *arguendo*, that a waiver under Rule 12 were categorical and would admit of no exceptions, it would still avail respondent nothing to point to the situation in federal court and argue that the same considerations should apply in the case of the instant petitioner, for a waiver under Rule 12 is not analogous to the waiver assertedly made by this petitioner: what this petitioner has assertedly waived cannot be waived under Rule 12.

More specifically, this petitioner is attacking the racial composition of the grand jury which indicted him on the ground that that composition resulted from a selection process which denied him equal protection of the laws. Thus the part of the Constitution upon which the instant petition is based is the Equal Protection Clause of the Fourteenth Amendment, and the right which respondent contends petitioner is now precluded from asserting is the right to equal protection of the laws. The Equal Protection Clause is worded as follows: "[n]o *State* shall . . . deny to any person within its jurisdiction the equal protection of the laws," (emphasis added) and it follows from this wording that, whatever may be the standard with which federal grand jury selection must comply, it is not the one set forth in the Equal Protection Clause of the Fourteenth Amendment,[3] for that clause ". . . effects a prohibition only on the states," Washington v. United States, 130 U.S.App.D.C. 374, 401 F.2d 915, 922 (1968), and is thus inapplicable to the Federal Government, the Federal Judiciary, and the Federal Rules of

Criminal Procedure. The sole point which this court wishes to stress in the present context, however, is that, whatever it may be that a federal defendant waives under Rule 12(b) (2), it is clearly not the right to complain of a denial of equal protection of the laws by virtue of racially-exclusive grand jury selection. It follows that the waiver provision of Rule 12 is necessarily not analogous to the waiver which respondent asserts was made by this petitioner: the practice in federal court has no bearing whatever on the issue presently before this court, and the cases cited by respondent are inapposite in the present context.

(3) Finally, ignoring the foregoing considerations completely, it is readily apparent from the cases that respondent's argument with respect to waiver is not well taken. "The 'waiver' asserted in this case is simply a diaphanous euphemism for forfeiture of rights resulting from a procedural default," Labat v. Bennett, 365 F.2d 698, 707 (5th Cir. 1966), certiorari denied 386 U.S. 991, 87 S.Ct. 1303, 18 L.Ed.2d 334 (1967), and the law is clear that "[a] procedural default, such as the one here in question, may not be regarded as a waiver unless it appears from the evidence that the default resulted from a deliberate choice made by counsel and participated in by his client." Wade v. Yeager, 377 F.2d 841, 846 (3rd Cir. 1967), certiorari denied 393 U.S. 893, 89 S.Ct. 218, 21 L.Ed.2d 173 (1968). More specifically, as stated by the United States Supreme Court, "[t]he classic definition of waiver enunciated in Johnson v. Zerbst, 304 U.S. 458, 464, 58 S. Ct. 1019, [1023,] 82 L.Ed. 1461, 1466, 146 A.L.R. 357 . . . furnishes the

---

3. In actual effect, of course, the federal and the state standards are the same. Nevertheless, the rights which give rise to the respective standards are different: if a federal defendant complains of the racial composition of the grand jury which indicted him, he is in fact complaining that his Fifth Amendment rights have been violated, while when a state defendant makes the same charge, he is in fact complaining (as is this petitioner) of an abridgement of his Fourteenth Amendment rights. *See, e. g.,* Washington v. United States, *infra*. Thus, violation of the Equal Protection Clause of the Fourteenth Amendment is not a defense to a federal prosecution, at least insofar as is relevant here, and hence is not one of the matters that can be waived under Rule 12.

controlling standard. . . . [And] a state court's finding of waiver [does not] bar independent determination of the question by the federal courts on habeas [corpus], for waiver affecting federal rights is a federal question [citation omitted]." Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 849, 9 L.Ed.2d 837 (1963). In short, regardless of whatever may be the procedural rule with respect to waiver in the criminal courts of Tennessee and regardless of whatever may be the federal practice in that regard, it is clear that the test for waiver which must be applied by this court in this case is the one expounded by the Supreme Court in the case of Johnson v. Zerbst, *supra.* It remains to examine that test in the light of the facts of the case at bar.

Under the holding in Johnson v. Zerbst, the ". . . 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and . . . 'do not presume acquiescence in the loss of fundamental rights.' A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver . . . must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson, supra,* 304 U.S. at 464, 58 S.Ct. at 1023 (citations omitted).

Viewing this petitioner in the light of his experience and background at the time of his indictment and conviction, it is readily apparent that the presumption against waiver set forth in Johnson v. Zerbst works conclusively to preclude a finding of waiver in his case, for there is nothing in the record which rebuts such presumption in any manner. However, petitioner need not place his reliance upon the effect of the presumption alone, for the uncontroverted evidence adduced in this case obviates the need for such reliance: this evidence establishes as a matter of fact that petitioner was unaware of so much as the remotest possibility of attacking his indictment on the ground herein at issue at the time the indictment was returned, at the time of his guilty plea and sentence, or at any other time until shortly before he actually raised the matter in his state habeas corpus petition. Clearly, under the Johnson v. Zerbst standard, petitioner cannot be held to have waived something of which he was not even aware.

■ It might be contended that, since the possibility of attacking an indictment on the ground that it was rendered by a racially-exclusive grand jury has long been available, *Strauder, supra,* petitioner's counsel should be charged with knowledge of such possibility and that such knowledge should, in turn, be imputed to petitioner. Such an argument is clearly not well taken in light of the fact that "[n]o lawyer in this State would have ever thought of objecting to the fact that Negroes did not serve on the Grand Jury in Tennessee in 1948. . . ." Henderson v. Russell, *supra* (Galbreath, Jr., concurring). What is more, petitioner's attorney stated in an affidavit executed in conjunction with petitioner's state court proceeding that, indeed, the possibility of raising the equal protection objection never occurred to him and that, in consequence, he never mentioned such possibility to petitioner. Given this latter fact, even if petitioner's counsel had been well aware of the possibility of attacking petitioner's indictment on equal protection grounds, but had, through either choice or negligence, failed to assert such grounds in his client's defense, his failure could not, on the facts of this case, be imputed to petitioner, because "[a] choice made by counsel not participated in by the petitioner does not automatically bar relief." Fay v. Noia, *supra,* at 439, 83 S.Ct. at 849.

In substance, shorn of the extraneous trappings of legal fiction, the outcome of this case turns upon the answer to the following simple question: Can a twenty-year-old black defendant, who had less than a sixth-grade education when he was charged with murder in

**120**

1948, be held intentionally to have relinquished or abandoned a known right or privilege by virtue of his failure, without contrary advice of counsel, to assert in his own defense the proposition that his indictment was constitutionally void in the light of the Equal Protection Clause of the Fourteenth Amendment, when, in fact, "[n]o lawyer in this State" would have thought of asserting such a defense? This court holds that he cannot. Labat v. Bennett, *supra*; Ellzey v. Breazeale, 277 F.Supp. 948 (S.D.Miss.1967); Gordon v. Breazeale, 246 F.Supp. 2 (N.D.Miss.1965).

It follows that petitioner's indictment and all proceedings based thereupon are void and of no legal effect. In consequence, his present incarceration is repugnant to the Constitution of the United States. It is, accordingly, ordered that he be released forthwith from the custody of the respondent.